## Staunton.

## J. H. GOINS V. ELKANAH GARBER.

September 22, 1921.

1. COSTS—*Non-Residents—Additional Security for Costs—Section 3539, Code of 1904.*—The lower court having complied with the mandatory provisions of the Code of 1904, section 3539, in requiring complainant, a non-resident, to give security for costs, was only bound to exercise reasonable discretion in regard to any subsequent motion for increase of the security, and where such a motion was not passed upon until after the court had decided the merits of the case adversely to the defendant, its refusal by the same decree which disposed of all the other questions to order additional security was reasonable and natural.

2. ANSWERS—*Answer to Amended Bill—Rejection of Answer.*—Defendant's answer to complainant's amended bill was an amplification of his first answer. There was no matter of defense therein which was not in general terms embraced in the first answer and in the issue previously made up and referred to a commissioner.

   *Held:* That under these circumstances there was no error in rejecting the answer, which in effect was done by sustaining the exceptions thereto.

3. ANSWERS—*Amendment—Discretion of Court.*—Applications to amend answers rest in every case in the sound discretion of the court.

4. SERVICE OF PROCESS—*Publication—"Unknown Heirs"—Section 3230, Code of 1904.*—In a suit for specific performance, a number of persons referred to in the bill as "unknown heirs" were made parties to the proceeding by this general classification and an order of publication was made and published against them as such. No objection was made to the sufficiency of the bill or publication in this respect.

   *Held:* That Code of 1904, section 3230, Code of 1919, sec. 6069, expressly authorized this course.

5. SERVICE OF PROCESS—*Publication—"Unknown Heirs"—Section 3230, Code of 1904.*—Section 3230, Code of 1904, Code 1919, sec. 6180, does not limit the class of cases in which a court of equity may direct that notice be given for hearings before its commissioners.

6. APPEAL AND ERROR—*Prejudicial Error—Assignment of Error—Case at Bar.*—It is incumbent upon an appellant not only to show error in the proceeding complained of, but to show also that the error was prejudicial. Thus, in the instant case, whether there were some persons included in the service by publication on the "unknown heirs" or personally served who were not in any way made parties to the bill and did not appear, and if so, how far they were bound by the commissioner's report and the decree confirming the same, were questions which it was not necessary to decide, as no such person was pointed out in the assignment of error, and no harmful error on account of any such fact was specified.

7. INFANTS—*Guardian Ad Litem—Parties to Suit.*—The preliminary report of a commissioner showed that several interested persons were infants, and the court appointed a guardian *ad litem* who filed his answer in that capacity, and also an answer for the infants by himself as guardian. It was alleged that this was error because the infants had not been made parties to the suit.

   *Held:* That this position was not tenable, as the infants were among the "unknown heirs" named as defendants in the amended bill in the suit and served by publication, and the action of the court was, therefore, entirely regular and proper.

8. SPECIFIC PERFORMANCE—*Vendor's Title Acquired by Adverse Possession.*—Where in a suit by the vendor for specific performance of the contract of sale, the evidence warranted the court in finding that complainant had acquired a good title by adverse possession, such title is as free from valid objections by defendant as if it had been acquired by a deed from a former true owner, or by a grant from the Commonwealth.

9. BILLS, NOTES AND CHECKS—*Interest after Maturity—Purchase Money Notes.*—A title bond provided for five notes, each "to become due in one, two, three, four and five years, the first three of said notes without interest, and the other two and last of said notes to bear interest from date."

   *Held:* That after maturity, the first three notes as well as the last two bore interest.

10. INTEREST AFTER MATURITY.—After maturity, unless some peculiar circumstances govern, interest follows the principal "as the shadow follows the substance."

11. VENDOR AND PURCHASER—*Interest Upon Purchase Money—Vendee in Possession.*—Where there were no serious defects in vendor's title and vendee had been in possession of the land ever since the title bond was given, it is clearly right to charge vendee with interest.

12. SPECIFIC PERFORMANCE—*Writ of Possession Against Person not*

*Party to the Suit—Frivolous Assignment of Error.*—A decree in favor of vendor, complainant in a suit for specific performance awarded a writ of possession against a third party for less than one acre of the land in controversy. There was nothing in the record to show that the third party had any valid claim to this land. He did not appear to have been a party to the bill, but was served with notice by the commissioner and the commissioner reported that "He did not appear and would not appear." This action of the court was assigned as error.

*Held:* That whether the action bound the third party or not, the assignment was frivolous and *de minimis,* as the only possible relief that defendant could claim would be an insignificant abatement of the purchase money.

13. COSTS—*Discretion of Court—Affirmance of Decree by Supreme Court of Appeals.*—The question of costs was one resting in the discretion of the lower court, and in the instant case there was no evidence of an abuse of that discretion. When the Supreme Court of Appeals affirms a decree in all other respects, it will not interfere with the decision in respect to the costs of the cause unless there is palpable error in that particular.

Appeal from a decree of the Circuit Court of Lee county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*L. T. Hyatt,* for the appellant.

*Jas. W. Orr,* for the appellee.

KELLY, P., delivered the opinion of the court.

A sufficient preliminary statement of the case is this: On the 18th of December, 1907, Elkanah Garber executed a title bond to J. H. Goins whereby he bound himself to convey to Goins on or before the 17th of December, 1908, a tract of land containing 107 acres. By the terms named in the bond, the sale was made by the boundary and not by the acre, and the purchase price was $300.00 paid and to

be paid as follows: $50.00 cash and $50.00 each succeeding year for five years, the deferred payments being represented by five notes executed by Goins. The bond specified that Garber should make to Goins "a good and sufficient deed, with covenants of general warranty and free from encumbrances."

Goins entered at once into possession of the land, and (with the exception of two small portions known as the Rhoda Lawson land and the Null Wallen land hereinafter mentioned, has remained in possession ever since, but he made no further payments on the purchase price.

In July, 1916, Garber filed his bill to specifically enforce the contract. He had not, theretofore, tendered Goins a deed, but alleged that he had not done so because no further payments had been made on the price, and he offered and filed a deed with his bill. Goins answered, setting up several minor defenses, but relying principally upon the allegation that Garber did not have a good title to the land. He did not ask for a rescission of the contract, but merely that Garber be required to perfect his title before any decree should be rendered to enforce the payment of the purchase money. There was an amended bill and an answer thereto, both of which will be more particularly mentioned later.

The cause was referred to George P. Cridlin, one of the commissioners of the court, to report on the state of the title, and he returned first a preliminary and later a final and very full and complete report. Upon the coming in of the latter, the court entered a decree confirming the same, disposing of all the questions in the case, and directing a sale of the land, unless within thirty days thereafter Goins should pay the balance of the purchase money and the costs of the suit. From that decree, this appeal was taken.

[1] 1. The first assignment of error is that the court improperly overruled a motion by the defendant to require the

complainant, who was a non-resident, to give an additional
bond to secure the costs. The assignment is without merit.
The motion in question was made after the cause was fully
matured for hearing on the merits and at the term at which
the final decree was entered. At a very early stage of the
case the defendant had, pursuant to the statute (Code 1904,
section 3539), suggested the non-residence of the complain-
ant, and the court had accordingly ordered the latter to ex-
ecute a cost bond in the penalty of fifty dollars. This bond
was duly given and no objection was then made as to the
amount of the penalty, nor does it appear that any ques-
tion was raised in that respect until four years later when
the case was about to be disposed of on its merits. The
court, having complied with the mandatory provisions of
the statute in the first instance, was only bound to exercise
reasonable discretion in regard to any subsequent motion
for increase of the security. The motion was not passed on
until after the court had decided the merits of the case ad-
versely to the defendant, and its refusal of the motion by
the same decree which disposed of all the other questions
was a perfectly reasonable and natural consequence.

[2, 3] 2. The next assignment charges that the court
erred in sustaining the complainant's exceptions to the de-
fendant's answer to the amended bill.

The answer to the original bill, after a general denial of
title in the complainant, undertook to point out certain par-
ticular defects therein. When the cause came on to be heard
the first time on the original bill, the answer thereto and
certain depositions, the court deemed it necessary and ac-
cordingly directed that the complainant should amend his
bill to bring in new parties in whom it appeared that the
legal title to the land, or some part thereof, might be out-
standing. This action of the court was in direct further-
ance of the course suggested by the defendant's answer,
and was eminently proper. In plain compliance with this

direction an amended bill was filed, bringing in new parties, all of whom, with the exception of one man whose name was given, were described in the decree ordering the amendment merely as the "unknown heirs" of certain deceased persons therein named, and by proper allegations the latter were made defendants to the amended bill under the general designation of "unknown heirs" of the deceased persons aforesaid.

The amended bill was filed on the 28th of September, 1916. At the September term, 1920, after all the evidence had been taken, the final report of Commissioner Cridlin filed, and the cause fully prepared for hearing, the defendant tendered and was allowed to file what he termed an answer to the amended bill. This paper was prepared and offered by counsel who had recently come into the case in place of the attorney originally employed, whose business had called him permanently to another jurisdiction. It was an amplification of the first answer, but it was not necessary. There was no matter of defense therein which was not in general terms embraced in the first answer and in the issue theretofore made up and referred to the commissioner. Under these circumstances there was no error in rejecting the answer, which in effect was done by sustaining the exceptions thereto. Applications to amend answers rest in every case in the sound discretion of the court. 1 Bart. Chy. Pr., p. 445. In our opinion, there was no abuse of discretion in this instance.

3. The third assignment of error is as follows: "The circuit court erred in directing Geo. P. Cridlin, commissioner, to report upon any other matter than the state of the title to the land in controversy, and particularly in directing the said commissioner to summon before him any person, or persons, whom he should deem necessary parties to the cause."

It is conceded that the reference to a commissioner for

the purpose of having a report upon the title was entirely proper, but the defendant contends that the following provision in the decree was erroneous: "Said commissioner will also ascertain and report whether or not all necessary parties are before the court that should be made parties in the cause, and should he find that any necessary party is not before the court he will summon such party before him as commissioner, either by personal service or by publication in some newspaper in the manner and for the length of time that orders of publication are made against non-resident defendants."

When the appeal was granted in this case we were disposed to think that this assignment raised a very interesting question of practice, namely: the question as to the binding effect of a decree in a case of this sort where an interested party not named in the pleadings, and who does not at any time voluntarily appear, is brought into the case and his rights adjudicated upon no other process than a notice given by a commissioner acting in pursuance of a general direction of the court to convene any necessary parties not theretofore named as such in the proceeding. Upon more mature consideration of the very voluminous record, however, we find that the question is not material here, and that it is entirely moot, so far as the decree complained of is concerned.

[4] The commissioner, in compliance with the provision of the decree above quoted, after much care and labor, compiled a long list of persons who were probably interested in the title to the land. This list, in the main, was comprised of persons referred to in the bill as "unknown heirs." By this general classification they had already been made parties to the proceeding and an order of publication had been made and published against them as such. The statute (Code 1904, section 3230) expressly authorizes this course, and no objection was made to the sufficiency of the bill or

publication in that respect. The commissioner published a
notice, as directed by the decree, addressed to all the per-
sons named in the list compiled by him as aforesaid, and
in addition to such publication caused the notice to be served
personally on a number of the individuals named therein.

[5, 6] It seems altogether probable that every person
who could be regarded as a necessary party to the suit (ex-
cept possibly Rhoda Lawson, who appeared and whose in-
terest was recognized and properly disposed of, and Null
Wallen, whose claim is hereinafter dealt with) was em-
braced either by name or under the general designation of
"unknown heirs." The notice, therefore, as to them was
given in the manner authorized by the statute (Code 1904,
section 3321). This section does not limit the class of cases
in which a court of equity may direct that notice be given
for hearings before its commissioners. *Hill* v. *Bowyer,* 18
Gratt. (59 Va.) 364, 380. Whether there were some per-
sons included in such publication or personally served who
were not in any way made parties to the bill and did not
appear, and if so, how far they were bound by the commis-
sioner's report and the decree confirming the same, are
questions which we need not decide. No such person (un-
less it be Null Wallen) is pointed out to us in the assign-
ment under consideration, and no harmful error on ac-
count of any such fact is specified. It is incumbent upon
an appellant not only to show error in the proceeding com-
plained of, but to show also that the error was prejudicial.

[7] 4. The preliminary report of the commissioner
showed that several persons named in the aforesaid list of
interested parties were infants, and the court appointed a
guardian *ad litem* to defend their interests. Accordingly,
the guardian filed his answer in that capacity, and also an
answer for the infants by himself as guardian. It is al-
leged that this was error because the infants in question
had not been made parties to the suit. This position is not

tenable. These infants were among the "unknown heirs" named as defendants in the amended bill, and the action of the court was, therefore, entirely regular and proper. See Code 1919, section 6098.

5. The fifth assignment of error is that the court erred in holding that Elkanah Garber had such title to the land in controversy as he contracted to convey, and therefore erred in decreeing specific performance.

The finding and adjudication of the court upon this point as expressed in its decree was as follows:

"That while the complainant, at the time he contracted said land to the defendant, J. H. Goins, had no legal title thereto, and has not since that time acquired such legal title, yet his claim thereto by reason of the turning over to him by A. B. Smith and Wm. Goins of the title bond executed to them therefor by John M. Tate, coupled with his possession thereof to the date of said contract and the possession of the defendant since the date of the said contract, constitutes such title as he contracted to convey, namely: 'a good and sufficient deed, with covenants of general warranty and free from encumbrances,' and this notwithstanding the fact that the said John M. Tate, who executed the said title bond to the said A. B. Smith and Wm. Goins, never had any legal title to the said land."

[8] It is said in the brief of counsel that this language of the court, showing that the complainant had only a possessory title, demonstrates the error complained of. This is altogether a mistaken idea. The evidence warranted the court in finding that the complainant had acquired a good title by adverse possession, and his title therefore was as free from valid objection as if it had been acquired by a deed from a former true owner or by a grant from the Commonwealth. *McClanahan's Adm'r* v. *N. & W. R. Co.*, 122 Va. 705, 716, 96 S. E. 453.

6. Error is assigned on the ground that the court over-

ruled the defendant's exceptions to the commissioner's report.

[9-11] The first two exceptions involve legal questions of no special interest or novelty, and pecuniary amounts which are *de minimis,* and as to these we content ourselves by saying merely that the exceptions were properly overruled. The only other exception was that the commissioner improperly allowed interest on the first three of the purchase money notes from their maturity. The title bond from Garber to Goins provided for five notes of fifty dollars each, "to become due in one, two, three, four and five years, the first three of said notes without interest, and the other two and last of said notes to bear interest from date." Of course, the commissioner was right in charging interest on the notes after maturity, unless there were some peculiar circumstances in the case to take these notes out of the general rule that interest follows the principal after maturity "as the shadow follows the substance." It is contended that there are such circumstances and that no interest should be charged "until the complainant procured a good title and delivered a deed in accordance with the stipulations of said title bond." It turns out, as a matter of fact, that there were no serious defects in the title, and, moreover, the defendant has been in possession of the land ever since the title bond was given. Under these circumstances it was clearly right to charge him with the interest. See *Barnett* v. *Cloyd,* 125 Va. 546, 100 S. E. 674; *Cohen* v. *Jenkins,* 125 Va. 635, 100 S. E. 678.

[12] 7. The seventh assignment is "that the court erred in the decree of September 15, 1920, in awarding a writ of possession against Null Wallen for the 147 square poles of land of which he was then in possession."

There is nothing in the record to show that Null Wallen had any valid claim to this less than one acre of land in controversy. He does not appear to have been a party to

the bill by name or by any general designation of classes, but he was served with notice by the commissioner and the commissioner reported that "he did not appear and would not appear;" that the commissioner was, therefore, unable to obtain any evidence of Wallen's claim, and accordingly reported that Wallen had no valid claim, and that a judgment should go against him for the land claimed by him.

Whether this action bound Wallen or not, it is evident that the assignment must be regarded as frivolous and *de minimis*. Wallen's claim and possession began after the land had been sold to and had been taken possession of by the defendant. The latter is not asking for rescission, and even if it were conceded (instead of being otherwise reported by a very accurate and careful commissioner) that Wallen had title to the small piece of land claimed by him, the only possible relief which the defendant could claim would be an insignificant abatement of the purchase money.

8. The eighth assignment is that the court erred in rendering judgment against the petitioner in favor of the complainant for costs.

[13] This assignment does not involve the general costs of this suit, but only a very small portion thereof accruing at an early stage of the case. The question of costs was one resting in the discretion of the lower court, and we see no evidence here of an abuse of that discretion. When this court affirms a decree in all other respects, it will not interfere with the decision in respect to the costs of the cause unless there is palpable error in that particular. *Wimbish* v. *Blanks,* 76 Va. 365, 369; *Williams* v. *Bond,* 120 Va. 678, 689, 91 S. E. 627.

The decree complained of is affirmed.

*Affirmed.*