# 𝔖taunton

## Merchants and Planters Bank, et als. v. Charles Forney, et als.

September 6, 1944.

Record No. 2824.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Martin & Martin*, for the appellants.

Appellee Charles Forney appeared in person.

SPRATLEY, J., delivered the opinion of the court.

This is an appeal from so much of a decree of the trial court as disallowed a credit for the payment by special commissioners of real estate taxes out of the purchase money received by them for the taxed property, and as denied a recovery of attorneys' fees provided for in certain notes in the event costs were incurred in their collection. The record accompanying the appeal was made out and delivered after due notice to the appellees, without objection or exception, and consists only of so much of the pleadings, exhibits, reports, and decrees in the case as relates to the above questions. Virginia Code, 1942, (Michie) section 6339. No

evidence is included, nor the complete report of the commissioner in chancery, to whom the cause was referred for an accounting.

Stated briefly, the following case is shown:

The suit was instituted on April 15, 1942, by Charles Forney, Profile Timber Corporation, Princess Anne Corporation, and Princess Anne Clothespins, Inc., hereinafter referred to as the plaintiffs, against Merchants and Planters Bank, Jesse J. Parkerson, trustee, and Howard G. Martin, trustee, hereinafter referred to as defendants.

The purpose of the suit was to have an accounting between the parties and to obtain an injunction restraining the foreclosure sales of real and personal property under certain deeds of trust hereinafter referred to, until such accounting could be had.

Charles Forney was president, a director and the controlling stockholder of each of the plaintiff corporations. For many years he has engaged in the manufacture and sale of clothespins on the real property herein involved or portions thereof, first through Profile Timber Corporation, and later through Princess Anne Clothespins, Inc.

The Merchants and Planters Bank loaned money from time to time to each of the plaintiffs for many years prior to 1941, and acted as their collecting agent to collect monies for merchandise sold by them. The plaintiffs would ship their products to their customers, present the invoices and bills of lading to the bank, and the bank would attend to the collection of the amounts due thereon, with the understanding that the proceeds were to be deposited either to the credit of the plaintiffs or applied to the retirement of the debts due by them to the bank.

For the purpose of protecting the bank for its advances, Harriet C. Forney and Charles Forney, her husband, by a deed of trust dated June 16, 1938, conveyed certain real property in Princess Anne county, Virginia, to Jesse J. Parkerson, trustee, to secure a negotiable, promissory note for $10,000, made by the grantors, payable on demand to the said bank. This note was delivered to the bank as col-

lateral security for past and such future borrowings as might be made from time to time by Forney and the corporations controlled by him.

The real estate embraced in this deed was leased to the Princess Anne Corporation, which sublet a portion thereof to the Norfolk Tidewater Terminals, Inc., for the storage of tobacco. The remaining portion was used for the manufacture of clothespins by the Profile Timber Corporation or by Princess Anne Clothespins, Inc. The personal property, consisting of machinery and equipment, used in the manufacture of clothespins, was formerly owned by the Profile Timber Corporation, and at the time of the suit by the Princess Anne Corporation.

On April 1, 1936, by a chattel deed of trust, Profile Timber Corporation conveyed certain of the personal property herein mentioned to Howard G. Martin, trustee, to secure a negotiable, promissory note for $5,000 of even date therewith, made by Profile Timber Corporation, and payable on demand to the order of Merchants and Planters Bank. This note was delivered to the said bank as collateral security for past and future borrowings by the Profile Timber Corporation or its successor.

On July 11, 1939, by chattel deed of trust, Princess Anne Corporation conveyed to Howard G. Martin, trustee, a portion of the personal property, hereinabove mentioned, to secure a negotiable, promissory note of even date therewith, in the sum of $3,000, payable on demand to Merchants and Planters Bank. This note was also delivered to the said bank as collateral security for past and future borrowings by Princess Anne Corporation or its successor.

The $5,000 note was signed in the name of the Profile Timber Corporation, by Charles Forney, its president and treasurer. The $3,000 note was signed in the name of the Princess Anne Corporation, by Charles Forney and Hulda Smithson.

In 1941, Merchants and Planters Bank refused to make any more loans to the plaintiffs. By agreement between the parties, all of the loans of the plaintiffs were then con-

solidated into three collateral form notes, which were held by the bank at the time of the institution of this suit, and represent the claim of the bank herein. One of these notes is dated August 1, 1941, signed by Princess Anne Corporation, by Charles Forney, its treasurer, for the sum of $9,-391.75, payable on November 5, 1941, for which as collateral security the bank held the hereinbefore mentioned deed of trust note for $10,000. A second note is dated September 16, 1941, for $2,222.25, signed in the name of Princess Anne Clothespins, Inc., by Charles Forney, treasurer, and Princess Anne Corporation, by Charles Forney, treasurer, payable on October 16, 1941, for which the bank held as collateral security all of the notes secured by the deeds of trust hereinbefore mentioned. A third note is for $2,440.86, signed in the name of Princess Anne Clothespins, Inc., by Charles Forney, its treasurer, payable on December 16, 1941, for which the bank held as collateral security the chattel mortgage notes hereinbefore described.

Each of the three collateral notes contained the following language:

" ........ days after date, the undersigned, jointly and severally, for value received, hereby promise to pay to MERCHANTS & PLANTERS BANK, (herein termed the Bank), or its order, at the banking house of the Bank in the City of Norfolk, Va., the sum of .................. DOLLARS and costs of collection, including an attorney's fee of 10%, if incurred, if payment is not made at maturity, having deposited herewith and assigned as collateral security for the payment of this and any other liability of the maker or makers hereof, or any of them, to the Bank either now existing or due or hereafter arising or coming into existence or becoming due, directly or indirectly, several or joint, as individual, co-partner, as maker, endorser, principal, surety, guarantor, or in any other capacity, and whether said liability be upon an obligation of similar character to this obligation, or otherwise, the following property, the market value of which is $...........; viz."

At the request of the bank, default having been made in the payment of the three collateral notes and each of the

deed of trust notes delivered as security, the trustees in the respective deeds of trust advertised the real and personal property for sale at a public auction to be held on April 20, 1942. On April 15, 1942, the plaintiffs instituted this suit, alleging that an auditing, adjustment and a settlement of the accounts between them and the bank would show that the collateral form notes had been paid off and discharged, or, at most, represented only a small fraction of the amount claimed by the bank, and that their accounts were so complicated as to require the assistance of a court of equity. They alleged the violation of an agreement between the parties, failure to allow proper credits, and that the value of the property involved was such that a sale would cause irreparable loss to the plaintiffs. They prayed that the sales be inhibited under the order of the court until the accounts between the parties had been audited and adjusted. The defendants answered the bill asserting default in the payment of the indebtedness to the bank, and denying all of the material allegations of fraud and inaccuracy, and the necessity of an accounting. The trial court granted a temporary injunction, effective to May 15th.

On May 19, 1942, another injunction was granted restraining the sale until the further order of the court. The court then referred the cause to N. T. Green, a special commissioner in chancery, and directed him to take and state the accounts between the plaintiffs and the defendant bank, and report any other matters pertinent and requested by any of the parties. This decree was effective upon a bond of $500 being given by the plaintiffs.

On October 5, 1942, the court authorized the commissioner in chancery to employ a certified public accountant to examine the records involved, and audit the accounts between the parties. It continued the injunction in force, provided the plaintiffs executed an additional bond (cumulative with the $500 bond theretofore given) in the penalty of $2,000, conditioned according to law.

It appears that the plaintiffs deposited $2,500 cash in the court to cover these bonds, or as security therefor.

Hearings before the commissioner in chancery continued from time to time from May, 1942, to April 20, 1943, when his report was filed. While the report contains only the final conclusion of the commissioner in chancery, and none of the evidence upon which it is based, we are told that the accounting involved a multitude of items covering many thousands of dollars, and that the testimony and exhibits were voluminous. The extent of the hearings and the work of the accountant and the commissioner are indicated by the fees allowed by the court. The accountant was allowed $1,000 and the commissioner $1,500. The stenographic report of the evidence before the commissioner cost $504.70.

Commissioner Green sustained the bank upon every question raised before him, and found that the plaintiffs owed the bank exactly the amount claimed by it in its answer in this proceeding. No mention is made of taxes, delinquent or otherwise, or any claim for attorneys' fees, nor does the record indicate that these matters were presented to the commissioner.

Thereafter, on April 20, 1943, the trial court confirmed and approved Commissioner Green's report in all respects, and especially the amount reported as owed to Merchants and Planters Bank by the plaintiffs, set out in detail in the report. It directed that the plaintiffs, or such person or persons as might be liable or interested by reason of ownership of the security, should within three days after the entry of the decree, pay to Merchants and Planters Bank the amount found to be owing to it, together with the costs of the proceeding, or such of the plaintiffs or other persons as might be interested in either the real estate or personal property, should pay unto the bank, within the same period of time, the part of said indebtedness secured by the class of property in which they were interested and which was held as collateral, together with the costs apportionate to it; or if, within the time mentioned, the same should not be paid, the real estate and personal property should be offered for sale. Jesse J. Parkerson and Howard G. Martin were appointed special commissioners to make such sale upon the

terms and provisions therein set out, in the event of non-compliance of the plaintiffs with the order of the court.

The special commissioners advertised a sale of the property to be held ·at. public auction on July 24, 1943. On July 23rd, the day before the scheduled sale, all of the plaintiffs, together with Princess Anne Tobacco Storage Corporation and· Hidud Realty Corporation, jointly filed a petition setting out the following matters:

(1) That the principal amount of the indebtedness .and interest due the bank had been duly fixed by the report of the commissioner in chancery and by the decree of July 10th as $14,469.46; (2) that the defendants claimed the total amount necessary to satisfy that indebtedness, together with court costs, trustees' costs, and incidentals of said· indebtedness, was $21,520.40, and in default of the payment of that sum the commissioners of sale proposed to sell the property at public auction pursuant to their advertisement; (3) that the defendants were not entitled to require the payment of $21,520.40 as the condition precedent to withholding sale, in. that costs and incidental expenses amounting to $3,326.33 had not been determined by the court to be due; (4) that during the progress of the cause Harriet C. Forney had conveyed the real property to the Princess Anne Tobacco Storage Corporation, subject to any indebtedness due the bank and secured on said property; (5) that the "Hidud Realty Corporation, by agreement with the petitioner Princess Anne Tobacco Storage Corporation, and all and every the plaintiffs to this cause, has agreed to bid for said properties and to pay for same the sum of $19,020.40 and do herewith tender to the Court its certified check for that sum; the said sum of $19,020.40, together with bond for costs which the plaintiffs have. heretofore filed in this cause and against which they have a cash deposit of $2,500.00, makes the total sum of $21,520.40, the full amount which defendants contend they are entitled to receive;" (6) that they prayed an order be entered discontinuing the foreclosure sale and directing the special commissioners to convey a full, complete, fee simple title to the properties, real and personal, free of

encumbrances, to Hidud Realty Corporation for $19,020.40 by private sale; (7) that the court determine the liability of the plaintiffs for the controversial cost items set forth in their petition, and if they be found liable for them or any of them, that such items "be paid out of the bond and deposit heretofore given by these plaintiffs in this cause;" and (8) that the proposed purchaser be given until July 28, 1943, to complete its examination of the title to the property.

On the same day, July 23, 1943, the cause came on to be heard on the petition, and the court ordered and directed that the offer of the Hidud Realty Corporation to purchase the properties be accepted, subject to the ability of the special commissioners to convey a clear fee simple title thereto, and that a period of seven days be allowed the purchaser for examination of the title.

On October 8, 1943, Jesse J. Parkerson and Howard G. Martin, as trustees and special commissioners, filed their report of sale in which they stated, (1.) that in accordance with the terms of the decree of July 23rd, they accepted the check of the Hidud Realty Corporation for $19,020.40, and withheld the advertised sale, in order to permit the attorney for the purchaser to examine the title; (2) that the said attorney reported, that, in addition to the taxes owing at the time of the entry of the above decree, he found real estate taxes for the years 1932 and 1938, delinquent and unpaid, in the sum of $1,182.45, and that same constituted a lien which would have to be satisfied before a clear and indefeasible title could be given the purchasers and the sale consummated; (3) that upon receiving this information they consulted the attorneys for the plaintiffs and the attorneys for the defendants, and that all of them, by their attorneys, were willing and anxious to consummate the proposed sale, even though the existence of the additional taxes had not been known to either party at the time of the entry of the decree of July 23, 1943; (4) that "the attorneys for the defendants stated that if, as a result of the payment of said taxes, the proceeds of said sale and other monies available for distribution were insufficient to pay all of the claims and

expenses allowed by the court, the bank would have to absorb the deficiency, or words to that effect;" (5) that, under the foregoing circumstances, and with the full knowledge of all parties, a deed conveying the said property, both personal and real, to Hidud Realty Corporation, with special warranty, was executed, acknowledged, and delivered to the said purchaser; (6) that the special commissioners paid the 1932 and 1938 taxes out of the purchase price; (7) that the debt due the bank, with interest, the costs and expenses incidental to the proceedings, including the delinquent taxes amounting to $1,182.45 and attorneys' fees of $1,446.04, for 10% of the amount collected on notes due the bank, made a total of $22,483.43, for which there was available for payment, the purchase price of the property, $19,020.40, refund on insurance premiums, $103.80, and money deposited by the plaintiffs in order to obtain the injunction bond, $2,500, a total of $21,624.20; and (8) that some of the items of suggested distribution in their report had been approved in Commissioner Green's report, but that others had not been passed upon, and they, therefore, desired instructions from the court as to proper schedule of distribution.

By decree of October 8, 1943, the court, after reciting the foregoing material facts, allowed the special commissioners credit for and directed the payment of all of the controversial items in their reports, except those for the 1932 and 1938 taxes, and the attorneys' collection fees, and ordered the disbursement of the funds in their hands accordingly. The $2,500 deposit of the plaintiffs was charged with so much as was necessary to discharge certain costs of the proceeding.

The defendants duly excepted to the action of the court with respect to the two disallowed items, and thereafter perfected this appeal solely as to them.

In the trial court, the plaintiffs were represented by learned, able, and competent counsel. Subsequent to the appeal, the plaintiff, Charles Forney, undertook to represent himself and each of the complainant corporations. Charles Forney, individually, and the plaintiff corporations, by

Charles Forney as their president, filed a lengthy brief, in which they controvert the defendants' assignments of error, and undertake to assign cross-error to certain rulings and decisions of the commissioner in chancery and the trial court asserted to have been rendered during the progress of the trial. None of such additional rulings and decisions are presented to us in defendants' petition for an appeal. None of the evidence upon which they are based is in the accompanying record, the whole record of the case presented to us, and accordingly we are in no position to consider them or to express an opinion thereon.

The sole questions for our consideration are defendants' assignments of error relating to the disallowance of the delinquent real estate taxes, and the refusal of an allowance of the attorneys' collection fees.

The 1932 and 1938 taxes constituted by statute a prior lien on the real estate superior to the claim of the bank, which had to be satisfied before a clear title to the land could be conveyed. Virginia Code, 1942, (Michie) section 5167, (12), requires a trustee selling property under a deed of trust to secure debts to apply the proceeds of sale, "first, to discharge the expenses of executing the trust," and "secondly, to discharge all taxes, levies, and assessments, with costs and interest, including the due prorata thereof for the current year," before making any other distribution thereof.

Section 337 of "The Tax Code of Virginia" provides that, "No decree or order shall be entered by any court of the Commonwealth directing the payment, or other distribution of any funds, securities, moneys, or other property under its control or under the control or in the hands of any receiver, commissioner or other officer of the court or any executor, administrator, trustee, or other fiduciary unless it be made to appear to such court that all taxes and levies upon such funds, securities, moneys or other property have been paid, or unless the payment thereof be provided for in such decree or order; * * * ."

It is apparent from the record before us that all parties desired that the bid of the Hidud Realty Corporation be ac-

cepted and a sale to it consummated in accordance with its offer. Each party was represented by counsel, and no objection was made by anyone. Each and every party consented and agreed to the payment of the taxes out of the purchase money, and acquiesced in the consummation of the sale under the circumstances mentioned.

There was no misrepresentation or concealment of material facts. No one was misled. All were fully cognizant of the facts and conditions existing. The taxes were a liability upon the property and against its owners. The plaintiffs knew the defendants would look to the cash deposited by the plaintiffs in court to take care of such taxes and other costs as might be necessary and proper. The language of the petition of July 23rd and the court's decree based thereon clearly indicate an agreement mutually binding all of the parties.

In Virginia a stipulation in a note for compensation to attorneys for collection fees incurred, if payment of the note is not made at maturity, is a valid, binding and enforceable contract. If the attorneys' fees are incurred under the conditions set out in the notes, they are a part of the same obligation as the principal and interest. *Oglesby Co.* v. *Bank of New York*, 114 Va. 663, 77 S. E. 468; *Triplett* v. *Second Nat. Bank*, 121 Va. 189, 92 S. E. 897; *Cox* v. *Hagan*, 125 Va. 656, 100 S. E. 666; *Atkinson* v. *Neblett*, 144 Va. 220, 132 S. E. 326; *Conway* v. *American Nat. Bank*, 146 Va. 357, 131 S. E. 803; *University of Richmond* v. *Stone*, 148 Va. 686, 139 S. E. 257; *Parksley Nat. Bank* v. *Accomac Banking Co.*, 166 Va. 459, 186 S. E. 38.

The litigation in this case was forced upon the bank by the plaintiffs. The fee charged the bank by its attorneys is not in dispute, and it is not alleged to be an unreasonable fee. It was clearly incurred as a result of the effort of the bank to collect upon its collateral notes after default had been made in the payment thereof at maturity. The plaintiffs not only denied the legality of the bank's claim, but vigorously attacked the accuracy of the items comprising the amount of the claim.

The deeds of trust did not provide for attorneys' fees and none are claimed thereon. No enlargement of the liens of these notes is claimed. The $1,446.04 was 10% of the balance and interest owing upon the three collateral notes. The real estate and personal property described in the deeds of trust securing the deed of trust notes sold for $19,020.40. After deducting the costs of sale and costs of preserving the property, the balance in the hands of the trustees was less than $18,000, the aggregate principal account of the three deed of trust notes. That balance was a collateral asset for the payment and satisfaction of the principal and interest due on the collateral notes, plus a 10% attorneys' fee for collection.

Since the costs of this proceeding were occasioned by reason of the futile contest instituted and prosecuted by the plaintiffs, they are liable therefor, and such costs should be charged against and paid out of their cash deposit of $2,500, so far as the same will permit, in order that the purchase money of the property sold may be applied, first, to the payment of the taxes thereon, and the balance, so far as it goes, to the satisfaction of the indebtedness to the bank, including a 10% attorneys' fee thereon.

We, therefore, reverse so much of the decree appealed as is in conflict herewith, and remand this cause for such further proceedings as may be necessary to carry out the views herein expressed.

*Reversed and remanded.*