## Richmond

### JOHN A. SCHWAB, JR. AND ALCOVA REALTY CORPORATION V. JOSEPH T. NORRIS.

January 14, 1977.

Record No. 751510.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*James B. Murray, Jr. (Richmond and Fishburne,* on briefs), for plaintiffs in error.

*Robert P. Boyle (Boyle and Bain,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

In the court below John A. Schwab, Jr., and Alcova Realty Corporation recovered a judgment against Joseph T. Norris for $17,450, with 8% interest thereon from August 25, 1975 (date of judgment) and 10% attorney's fee. The recovery was had on a certain promissory negotiable note for $17,450, dated July 15, 1971, signed by Joseph T. Norris, payable 90 days after date to the order of John A. Schwab, Jr./Alcova Realty Corporation. The maker of the note agreed "to pay an attorney's fee of 18% of the amount of this note for collection in case payment shall not be made at maturity". Schwab and Alcova have appealed and

allege that the court erred in not allowing interest from October 14, 1971, the maturity date of the note, and in not allowing appellants to recover the full 18% attorney's fee.

Alcova operates a real estate agency in Charlottesville. Schwab, who is the president of and a stockholder in the corporation, is a licensed real estate broker and agent. Norris is an architect who develops and invests in real estate. In 1969 they entered into a joint venture under the name of Alcova Management Corporation to manage apartment buildings throughout the state. The parties envisioned that Norris would receive architectural fees, Schwab and Alcova would receive real estate commissions, and their management corporation would receive managerial fees.

In the fall of 1969, Schwab located for Norris a 116 acre tract of land in the Lynchburg area on which Norris intended to construct multi-family dwellings. Norris obtained an option to purchase the property for $349,500. He subsequently exercised his right to purchase, and the closing date was set for July 28, 1971. Keystone Realty, owner of the land involved, had agreed to pay a 10% commission on the sale price, of which amount a Lynchburg real estate agency was entitled to 5% and Alcova Realty and Schwab were entitled to 5%. At the time of closing Norris was experiencing financial difficulties and requested Schwab to accept his note in lieu of the cash commission that Schwab and Alcova were entitled to receive. Accordingly, Norris gave Schwab and Alcova the note which is involved in this controversy representing one-half of the real estate commission. Schwab then wrote a letter stating that Norris had paid this sum. The effect of this arrangement was to reduce the amount that Norris had to raise at closing by $17,450, and to defer for 90 days the payment of the amount due Schwab and Alcova for their part of the commission.

On July 17, 1971, about the time that Norris executed the $17,450 note, Schwab agreed in writing to pay Norris the sum of $5,235.[1] This amount is exactly one-half of the commission that

---

"7/17/71

[1] "In accordance with our agreement of today I John A. Schwab do agree to pay to Joseph T. Norris for architectural services already performed $5,235.00. Said $5,235.00 to be paid by John A. Schwab Jr. out of his share of commissions generated by Joseph T. Norris from the above date until paid.

Witnessed by                                   Signed
Marie T. Hammond                               John A. Schwab Jr."

Schwab would personally receive on the sale of the Keystone property under his arrangement with Alcova. Although the note stipulated that it was given "for architectural service to be paid out of future business", Norris testified that the note was given pursuant to a commitment by Schwab that he would reduce his commission and that "this enabled me to go forward with the transaction".

It appears that prior to, or immediately after, the closing of the transaction, certain property owners, who had constructed homes in a subdivision adjoining the 116 acre tract purchased by Norris, voiced strong protest to his proposed construction of multi-family dwellings thereon. This controversy resulted in litigation which was ultimately compromised. Schwab obligated himself to contribute one-fourth of the objecting landowners' attorney's fees which Norris agreed to pay to their counsel as a part of the agreed settlement.

Norris, responding to appellants' motion for judgment, filed on July 5, 1974, for $17,450, submitted his grounds of defense and also filed a counterclaim against Schwab for $6,035, of which $5,235 was evidenced by Schwab's written agreement and $800 represented one-fourth of the amount which Norris had paid to counsel for the protesting property owners. Upon trial the court concluded that "equity would be best served if both parties were put in the same position they were in at the time of the execution of the notes". It then entered final judgment as follows:

> "[T]hat the Plaintiffs shall have judgment against the Defendant in the amount of $17,450.00 plus $1,745.00 in attorney's fees. This judgment of $19,195.00 in favor of the Plaintiffs shall be apportioned as follows: $11,517.00 is due by the Defendant to the Plaintiff, John A. Schwab, and $7,678.00 is due by the Defendant to the Plaintiff, Alcova Realty Corporation. The Defendant shall have judgment against the Plaintiff, John A. Schwab, in the amount of $6,035.00.
>
> "It is accordingly ORDERED that the Defendant shall pay to the Plaintiff, Alcova Realty Corporation, the sum of $7,678.00 with interest at eight per cent (8%) per annum from May 30, 1975 until paid. It is further ORDERED that the Defendant shall pay to the Plaintiff John A. Schwab, the net sum of $5,482.00 with interest at eight percent (8%) per annum from May 30, 1975 until paid."

Appellants' assignments of error question only the amount of interest and attorney's fee allowed them. Appellee assigned no cross-error. The $5,235 agreement given Norris by Schwab made no mention of interest or provision for attorney's fees. No demand was made on Schwab by appellee for payment prior to the time appellants filed their motion for judgment.

Code § 8-223 (Cumm. Supp. 1976) provides, in part, that:

"Except as otherwise provided in § 3-122 of the Uniform Commercial Code, in any action whether on contract or for tort, the jury may allow interest on the sum found by the verdict, or any part thereof, and fix the period at which the interest shall commence. . . ."

The 1964 General Assembly, by amendment effective January 1, 1966, added the exception at the beginning of the section. Under "Virginia Comment" to Code § 8.3-122, the existence of a fundamental conflict between Code § 8-223 and § 8.3-122(4) had been acknowledged. It was there stated that "Some amendment of the Virginia statutes would seem to be desirable so as to make clear that § 8.3-122(4) prevails over Code 1950, § 8-223, and to clarify Virginia law as to the interest rate provided by law for a judgment on commercial paper".

Code § 8.3-122 provides:

"**Accrual of cause of action.** — (1) A cause of action against a maker or an acceptor accrues

"(a) in the case of a time instrument on the day after maturity;

"(b) in the case of a demand instrument upon its date or, if no date is stated, on the date of issue.

"(2) A cause of action against the obligor of a demand or time certificate of deposit accrues upon demand, but demand on a time certificate may not be made until on or after the date of maturity.

"(3) A cause of action against a drawer of a draft or an indorser of any instrument accrues upon demand following dishonor of the instrument. Notice of dishonor is a demand.

"(4) Unless an instrument provides otherwise, interest runs at the rate provided by law for a judgment

"(a) in the case of a maker, acceptor or other primary obligor of a demand instrument, from the date of demand;

"(b) in all other cases from the date of accrual of the cause of action. (1964, c. 219.)"

We would observe that even prior to the enactment in Virginia of the Uniform Commercial Code it was noted that its enactment would bring about a conflict between § 3-122 of the UCC, which provided that interest on a note with a definite time of payment begins to run the day after maturity, and Virginia Code § 8-223, which gave the jury discretion to fix the time when interest commences and the rate in "any action . . . on contract". *See* W. Ritz, The U.C.C. & The Commercial Law of Virginia 80 (1956); 12 W & L L. Rev. 1, 20 (1955). The Virginia Advisory Legislative Council, in its report to the Governor and the General Assembly of Virginia in 1963, recognized that a statutory amendment was necessary to make it clear that UCC § 3-122 prevailed over Code 1950, § 8-223.

We therefore conclude that the 1964 amendment to § 8-223 was designed to remove from the jury or the court the discretionary power to set the time from which interest would run in the case of commercial paper. While it is clear that the note involved in this case constitutes commercial paper, as defined in Code § 8.3-104, and is in fact governed by the provisions of Code § 8.3-122, it appears that in any event the authorities support the imposition of interest from the date of maturity. *See Parsons* v. *Parsons*, 167 Va. 374, 189 S.E. 448 (1937); *Goins* v. *Garber*, 131 Va. 59, 108 S.E. 868 (1921). The interest which a statute permits to be recovered is an award for delay in the payment of money due. *See Nationwide Mutual Ins. Co.* v. *Finley*, 215 Va. 700, 702, 214 S.E.2d 129, 131 (1975).

Neither do we find authority for the action of the court in reducing to 10% the agreed 18% attorney's fee provided in the note for collection if not paid at maturity. There was no allegation or evidence of mistake, fraud, misrepresentation or overreaching, and we do not find that the fee agreed upon in the note was unreasonable. The transaction between Messrs. Schwab and Norris was a common real estate transaction between two experienced businessmen. The real estate agents were entitled to be paid their commission on the date the transaction was closed. Had this occurred they would have had the use of the money on and after July 28, 1971. Instead, they accepted Norris' note which was not paid at maturity and appellants did not receive money then due them. It is true that

Norris became involved in a law suit which delayed the development of his project and proved costly to him. However, this is not unusual in real estate transactions and, in any event, was an occurrence unrelated to the note and the entitlement of appellants to collect it from Norris.

In *Merchants, Etc., Bank* v. *Forney*, 183 Va. 83, 94, 31 S.E.2d 340, 345 (1944), Mr. Justice Spratley, speaking for the Court, said:

> "In Virginia a stipulation in a note for compensation to attorneys for collection fees incurred, if payment of the note is not made at maturity, is a valid, binding and enforceable contract. If the attorneys' fees are incurred under the conditions set out in the notes, they are a part of the same obligation as the principal and interest. [Citing numerous cases.]"

To the same effect, *see Sutherland* v. *Rec'r Dickenson Co. Bank*, 163 Va. 949, 955, 178 S.E. 12, 14 (1935), where we held that the validity of a stipulation providing for reasonable attorney's fee has been settled in Virginia since the case of *Colley* v. *Summers Parrott Hardware Co.*, 119 Va. 439, 89 S.E. 906 (1916).

Unlike the situation in *Richardson* v. *Breeding*, 167 Va. 30, 187 S.E. 454 (1936), we find no evidence that the amount agreed upon in the note for collection by an attorney is unreasonable. The litigation here was forced upon Schwab and Alcova by the appellee. The attorney's fee was incurred by appellants in an effort to collect upon a note after default had been made, and after demand for payment had been refused. Norris denied that appellants were entitled to recover anything from him and vigorously contested the action brought by appellants. Not only were appellants denied payment at maturity but they were also put to the cost and hardship incident to the preparation and presentation of their case in the court below and in this Court.

We, therefore, reverse so much of the final order appealed from as fails to award appellants the 18% attorney's fee provided in the note and as fails to award appellants interest at the then lawful rate from October 14, 1971. The cause is remanded for such further proceedings as may be necessary to carry out the views herein expressed.

*Reversed and remanded.*