Builders By Design, L.L.C.

 v.

Robert Wilson

Case No. (Civil) CL10-3765

Robert Wilson

 v.

John Johnston
and Builders By Design, L.L.C.

Case No. (Civil) CL10-3830

July 25, 2011

BY JUDGE JEROME JAMES

 This matter came before the Court on April 26, 2011, for a three-day consolidated trial on the parties' Complaints. Builders by Design, L.L.C. (hereinafter "Builders") has filed a Complaint for breach of contract by the homeowner, Mr. Robert Wilson. Wilson also filed a Complaint against Builders in which he seeks damages for breach of contract and fraud by Builders. The cases were consolidated for trial, and both parties presented evidence over the course of the three-day trial. On the final day of trial, Mr. Carnes, counsel for Wilson, withdrew the claim for fraud and for damages based on delay of performance by Builders, leaving only the claims for breach of contract, damages, and attorney's fees to be decided by the Court in this letter opinion.

## Background

These claims arise from a contractual relationship between Builders and Wilson that was memorialized on May 20, 2009, with a seven-page contract, entered into evidence as Builders' exhibit 1. The parties had discussions regarding the scope of the project prior to signing the contract in May 2009. During these discussions, the parties agreed to the scope of the project and the expectations for the renovations. The contract outlined the work to be performed by Builders at Wilson's residence, located at 9345 Sturgis Street, Norfolk, Virginia 23503. The contract included building a poolroom addition, constructing a hallway leading into the poolroom addition from the original structure, building a master suite addition, converting a bedroom into a bathroom, and a number of other smaller renovations and repairs to the existing structure.

During the course of the project, there were a number of change orders agreed to by the parties. (*See* Pl.'s Ex. 8.) Some of these change orders came at a cost to the homeowner, and some were completed by Builders without any additional charge. There came a time during the construction when the parties began to disagree as to some aspects of the project and how the project was being carried out. After multiple disagreements between the parties and after being kicked off the project site once before, Builders received an e-mail from Wilson on March 28, 2010, directing Builders: "not to order any more material for this job or to perform any further work and [that Builders] will not enter the job site without [Wilson's] permission in writing." (Pl.'s Ex. 12.) This e-mail marked the last communication between Builders and Wilson until their Complaints were filed in this Court in the spring of 2010.

Builders filed a Complaint contending that the e-mail sent by Wilson on March 28, 2010, was a material breach of their contract. Based on this breach, Builders' has requested that the Court award it lost profits on the remainder of the project, which was left unfinished as of the date of Wilson's breach, and to award it costs for work it performed, but which Wilson has not yet paid. The final aspect of Builders' claim is a request for attorney's fees pursuant to their contractual agreement.

Wilson also filed a Complaint alleging breach of contract and fraud by Builders. After Builders was asked to leave the jobsite by Wilson, he hired another building company, Meadow Green Builders (hereinafter "Meadow Green"), to come survey the jobsite and finish the work that remained to be completed under the original contract between Wilson and Builders. Meadow Green testified that much of the work performed by Builders was not completed in a workmanlike manner. Wilson alleges that Builders is responsible for the amounts he paid Meadow Green to complete the renovations, which were within the scope of the original contract, and for repairs to remedy the structural deficiencies found by Meadow Green.

*Analysis*

A. *Breach*

One of the remaining issues in this case is which party or parties breached the contract, and which, if any, of these breaches was a *material breach* of the contract. Therefore, the temporal order of the breaches is significant in this case.

It is well established in Virginia that the party who commits the first breach is not entitled to enforce the contract against the other party for a subsequent breach of the same contract. *Hurley v. Bennett, Receiver for First Nat'l Bank of Grundy, Va.*, 163 Va. 241, 253, 176 S.E. 171, 175 (1934); *Shen Valley Masonry, Inc. v. S. P. Cahill & Associates, Inc.*, 57 Va. Cir. 189, 198 (Charlottesville 2001). The exception to this general rule is when the first breach did not amount to a material breach but only affected a minor aspect of the contract. *Shen Valley*, 57 Va. Cir. at 198. However, if the first breaching party *materially* breaches the contract, the other party is excused from performing their obligations under the contract. *Id.* "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 204 (1997); *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001).

Wilson alleges that Builders breached the contract when it performed work on his residence that he believes was not completed in a workmanlike manner. Most significantly, Wilson alleges that the roof on the poolroom was not completed in a workmanlike manner, because his second contractor, Meadow Green, described the roof as "spongy" and not structurally sound. Wilson's experts also testified that other areas of the home were not fit for habitation and that there were a number of significant structural deficiencies in the work completed by Builders.

However, Wilson's contention that Builders was the first party to breach the contract is flawed. Wilson did not learn of Builders' alleged breach until sometime after he sent Builders an e-mail forbidding it from returning to his property or working on this project without future written permission. Note that no evidence was presented at trial that showed Wilson had any indication that Builders' work was not being done to an acceptable standard in the construction industry before he executed the e-mail. The only testimony regarding Wilson's knowledge about the quality of Builders' work was from Guy Sorenson and Dennis Murtland. The testimony from these witnesses, both employed by Meadow Green, was that they came to know Wilson sometime in April or early May 2010 when they visited Wilson's residence to determine the scope of the remaining home renovation project. It was not until the inspection by Sorenson and Murtland, which occurred

after Wilson kicked Builders off the project on March 28, 2010, that Wilson was put on notice of the alleged structural deficiencies.

Builders' knowledge regarding the structural soundness of the renovations and poolroom roof came from two sources only, its observations and oversight of the jobsite as well as from the work passing city inspections. On March 26, 2010, William P. Johnson, Jr., Senior Code Specialist for the City of Norfolk, approved Builders' framing work at Wilson's residence, including the poolroom roof. Builders relied on the city inspection and continued with the home renovations after passing inspection and being given the authority to move onto the next phase of construction. During the course of the renovation project, the city building inspector had been out to the jobsite a number of times to conduct inspections. On a few occasions, the city inspector found errors or defects with the work and required Builders to correct these issues on the jobsite before it could pass inspection. After each of the errors or defects for a particular aspect of the permit had been completed, the city building inspector could allow Builders' jobsite to pass that phase of the inspection, and Builders could continue with construction. In this regard, the Court takes note that there has been no testimony offered at trial to allege that William P. Johnson, Jr., was incompetent in performing his duties as a city building inspector or that Builders and other construction professional are not permitted to rely on a city building inspection approval of their work before proceeding with the next phase of construction.

After learning of the alleged deficiencies in Builders' work, Wilson never contacted Builders about these problems. The first time Builders learned of Wilson's claim about its alleged defective performance was when it received his Complaint filed with this Court on June 4, 2010. Under the law of contracts, Wilson had a duty to mitigate his damages and, at a minimum, to permit Builders an opportunity to remedy any deficiencies in its work before he terminated the contract. At no time did Wilson permit Builders such an opportunity nor did he even inform Builders that there were any problems with its work. *See CSX Transp. v. Casale*, 247 Va. 180, 186, 441 S.E.2d 212, 216 (1994) ("Ordinarily, a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages.") (quoting *Chesapeake & Ohio RR. v. Kelly*, 241 U.S. 485, 489, 36 S. Ct. 630, 60 L. Ed. 1117 (1916)); *Hannan v. Dusch*, 154 Va. 356, 377-78, 153 S.E. 824, 831 (1930) (holding that a plaintiff must use "reasonable exertions or care on his part" to prevent damages).

On the other hand, Builders alleges that Wilson materially breached the contract on March 28, 2010, when he sent the following e-mail to Builders: "You are not to order any more material for this job or to perform any further work and you will not enter the job site without my permission in writing." (Pl.'s Ex. 12.) This e-mail constituted a material breach of the contract. At the time of the breach, there was at least $32,000 worth of

unfinished work to Wilson's home renovation project. Builders and Wilson were still executing many change orders, and the project was not yet close to completion.

A material breach is one that is so fundamental to the contract that its failure to be performed defeats the purpose of the contract. *Horton*, 254 Va. at 115, 487 S.E.2d at 204; *Peyton*, 261 Va. at 154, 541 S.E.2d at 285. In this case, the purpose of the contract was to complete a home renovation at 9345 Sturgis Street, Norfolk, Virginia 23503. By executing an e-mail to Builders refusing to permit it access to the property and requiring it to cease working on the jobsite prior to completion, Wilson made it impossible for Builders to fulfill its contractual obligations. Builders contends that this amounts to a termination of the contract by Wilson and a clear material breach of the same. The Court agrees.

Wilson has no right to recover for breach of contract because his termination of the contractual relationship was the first and only material breach of this contract. Where Wilson was the first party to materially breach the contract, Builders is entitled to recover damages for that breach, but Wilson is not entitled to recover anything for any subsequent breaches by Builders.

After consideration of the evidence and testimony at trial, along with counsels' arguments, the Court hereby finds that Wilson materially breached its contract with Builders, and Builders is entitled to an award of damages.

B. *Damages*

"As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 266, 682 S.E.2d 943, 946 (2009) (quoting *Kamlar Corp. v. Haley*, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983)). The prevailing party is responsible for proving its damages with reasonable certainty, but there is no requirement that damages be calculated with absolute "mathematical certainty." *See Nichols Constr. Corp. v. Virginia Mach. Tool Co.*, 276 Va. 81, 89, 661 S.E.2d 467, 472 (2008).

Builders alleges two categories of damages as a result of Wilson's breach of contract: (1) payments for completed work that Wilson had not yet paid prior to the termination of the contractual relationship and (2) lost profits on the work Builders was unable to perform because of Wilson's breach.

Builders' damages claim for unpaid work due from Wilson includes $822.50 for the completed work on the rough-in for the half-bathroom change order (*see* Pl.'s Ex. 8), $250 for plumbing services Builders requested Wilson reimburse, and $200 allegedly paid to Scott King for unauthorized masonry work to the foundation that Builders was forced to pay and which

Builders wants Wilson to reimburse it for. (Trial Tr. vol. 1, 122-28, April 26, 2011.)

The unrebutted testimony at trial was that Wilson agreed to pay Builders $822.50 for a payment towards a change order in an e-mail sent to John Johnston, the owner of Builders, on February 15, 2010. (Pl.'s Ex. 13.) This change order was signed by the parties on January 5, 2010, and would cost Wilson a total of $3,290.00. (Pl.'s Ex. 8.) The unpaid amount is also enumerated on an invoice sent by Builders to Wilson on March 16, 2010, indicating that this amount was still outstanding and that the installation of that portion of the change order had been completed. (Pl.'s Ex. 14.) Based on the unrebutted testimony and the evidence admitted at trial, the Court awards Builders the $822.50 owed to it from Wilson on this change order.

However, the Court denies Builders' request for the remaining two amounts it claims are owed by Wilson, for the masonry and plumbing work. There is nothing in evidence to demonstrate these payments were ever made by Builders. There is not an invoice, bill, or canceled check to prove what amount, if any, was paid by Builders to these third parties. Secondarily, there is no reason put forth by Builders why the homeowner should be responsible for making payments to subcontractors or reimbursing Builders for amounts paid to subcontractors on the job site for work within the scope of the contract. These amounts are too uncertain and speculative, and the Court will not permit their recovery based solely on Builders' testimony at trial.

The second aspect of damages is Builders' claim for lost profits on the remainder of the work left uncompleted on Wilson's home renovation project after Wilson terminated the contract. Under the original contract, there remained $32,000 of uncompleted work. Builders' estimated that the actual cost of that work would have been $28,000 and the remaining $4,000 would be profit on that portion of the contact. Additionally, Builders claims $246.75 for lost profits from the uncompleted half of the rough-in painting and unfinished work on the half-bathroom change order discussed above and in plaintiff's exhibits 8, 13, and 14. Builders alleges that the profit on the change order would have been approximately 30 percent of the remaining work, valued at $822.50. This amounts to $246.75 for the lost profits from the change order. There was no testimony or evidence presented at trial to rebut either of these amounts, and the Court believes that the damages have been sufficiently proven by Builders. Therefore, the Court awards Builders a total of $4,246.75 in lost profits from the work left uncompleted work on this project as of the date Wilson terminated the contract.

The total award of damages to Builders is $4,246.75 in lost profits and $822.50 in unpaid invoices and amounts due, a total of $5,069.25.

C. *Attorney's Fees*

The final request by Builders is that it be awarded attorney's fees based on its contract with Wilson. Wilson and Builders had a contractual agreement, whereby Wilson would be responsible for "all attorney's fees as a result of any suit [arising from this contract] if builder should prevail in any such court action." (Pl.'s Ex. 1 at 6.)

Generally, the prevailing litigant does not get an award of attorney's fees unless there is a statutory or contractual obligation saying otherwise. *See Gilmore v. Basic Indus., Inc.*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987); *S. W. Rodgers Co. v. Aztec Constr. Co. and ULICO Cas. Co.*, No. 155591, 1997 Va. Cir. LEXIS 690, at *14 (Nov. 26, 1997). However, a party may receive attorney's fees where the contract specifically contemplates them. *East Tex. Salvage & Mach. v. Duncan*, 226 Va. 160, 161, 306 S.E.2d 896, 897 (1983). Where the parties do not dispute the reasonableness of the claimed attorney's fees, the Supreme Court of Virginia has permitted the winning party to recover all of the fees the contract contemplated. *Clevert v. Jeff W. Soden, Inc.*, 241 Va. 108, 112, 400 S.E.2d 181, 184 (1991). But, if the parties do not agree to the reasonableness of the attorney's fees, "[i]t is held that determining the amount of a reasonable attorney's fee lies within the sound discretion of the court." *Elstner v. Golden*, 56 Va. Cir. 378, 380 (Spotsylvania County 2001); *see Schwab v. Norris*, 217 Va. 582, 231 S.E.2d 222 (1977); *Richardson v. Breeding*, 167 Va. 30, 33-34, 187 S.E. 454 (1936). Pursuant to these precedents, Builders would be entitled to its attorney's fees if the Court finds that it has prevailed in its action *and* sufficiently proven the amount and reasonableness of the attorney's fees requested.

Counsel for Builders submitted a two-page document to the Court as proof of its attorney's fees. This document has a list of attorney's names in the furthest left column and the hours and amounts billed by each attorney in the right-hand columns. It appears that the total amounts of fees accrued, based on these printouts, are $16,050.00 and $14,987.50. Counsel for Wilson contests any award of attorney's fees in this case. He argues that the fees submitted by Builders are three times the amount of attorney's fees Wilson has amassed in the same litigation and that the lack of supporting documents does not provide the Court any basis to find that the amounts requested by Builders are reasonable.

For the Court to find that the fees requested are reasonable, there must be some reasonable nexus between the fees charged to the client and the work performed for the client. The evidence submitted by counsel for Builders at the trial does not give the Court any insight into what work was actually being performed by the attorneys billing this time. The document lacks any descriptions of work completed, and, in fact, the document does not appear to list the client's name even once on either statement. This

bare-bones document does not give the Court sufficient evidence to award attorney's fees in an amount of over $30,000. The Court will not speculate as to the amount of the work performed by Builders' counsel during this litigation and will not assume that these printouts reflect the charges for any particular client when it is unclear on the face of this document which client is being billed for these services.

The Court denies Builders' request for attorney's fees.

## Conclusion

The Court, after thoughtful consideration of all of the issues presented in this case, declines to find that Builders materially beached its contract with Wilson. The greater weight of the evidence clearly shows that Wilson was the first party to materially breach the contract, thereby causing Builders to suffer lost profits of $4,246.75. The Court further finds that Wilson is liable for $822.50 for unpaid invoices due to Builders. However, the Court will not award Builders any further amounts based on its testimony that Wilson agreed to pay and has not yet paid, reimbursements to particular subcontractors. The total award of damages to Builders is $5,069.25. The Court denies Builders' request for attorney's fees because of a lack of evidence proving the reasonableness of the fees assessed. Finally, the Court dismisses Wilson's claims against Builders for breach of contract and fraud.