In re CRAFTY FOX, LTD., Debtor.

FARMERS AND MERCHANTS
BANK, Plaintiff,

v.

CRAFTY FOX, LTD., Defendant.

Bankruptcy No. 77–00164.

United States Bankruptcy Court,
W. D. Virginia.

Feb. 6, 1980.

See also D.C., 475 F.Supp. 634.

Joseph P. Bounds, Roanoke, Va., for debtor-defendant.

Ralph B. Rhodes, Hutcherson & Rhodes, Rocky Mount, Va., for plaintiff.

Diana Perkinson, Roanoke, Va., for creditors' committee.

Ernest L. Light, Roanoke, Va., for disbursing agent.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The question presented concerns the reconsideration of the allowance of attorney's fees provided for in a deed of trust note secured upon debtor's real estate liquidated under a Chapter XI plan.

The threshold question involves the construction of *Bankruptcy Rule* 307[1] as to reconsideration of claims. A determination of this issue requires a review of the history of the case.

The Debtor, Crafty Fox, Ltd., owned and operated a 200 acre horse farm and riding stables in Franklin County, Virginia. As a part of this operation, the debtor also boarded horses for persons within the Roanoke area. In the course of its operation, cash flow and other financial troubles befell the debtor resulting in the filing of a Chapter XI petition in this Court. Thereafter, a plan was filed by the debtor, accepted by the creditors and confirmed by the Court. The plan provided for the sale and liquida-

---

1. *Rule* 307. *Reconsideration of Claims.*

"A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. If the motion is granted, the court may after hearing on notice make such further order as may be appropriate."

tion of all assets of the debtor free of liens with the liens being transferred to and impressed upon the proceeds. See *Ray v. Norseworthy*, 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1875); *Van Huffel v. Hardelrode*, 284 U.S. 225, 52 S.Ct. 115, 76 L.Ed. 256 (1931); *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938); *Alleboch v. Thomas* 16 F.2d 853 (4th Cir. 1927) cert. denied, 274 U.S. 744, 47 S.Ct. 590, 71 L.Ed. 1325 (1927). The proceeds were to be distributed to its creditors in accordance with their respective priorities.

Among the creditors were two secured creditors holding deed of trust liens securing notes upon the debtor's real estate.

The first deed of trust had a total payoff of principal and interest of $112,409.70. This note was held by Loyd Flora, *et al.* (Flora) representing the initial purchase money of the farm. A second deed of trust note with a final payoff of $71,866.12, including principal and interest, was held by Farmers and Merchants Bank (Bank). Additionally, there were substantial priority creditors such as taxes, costs of administration and other claims, as well as substantial general unsecured creditors. Neither the debts represented by the notes or the liens secured by the deeds of trust were ever challenged throughout the proceedings by the debtor, creditor's committee or other party.

Both secured creditors filed Complaints pursuant to *Rule* 11–44 to be relieved from the stay and permitted to foreclose their respective deeds of trust. Decision thereon was deferred upon the Complaints to enable the Debtor to present a plan to its creditors for their consideration and acceptance. The plan was presented, accepted and confirmed providing for a sale free of liens at public auction subject to confirmation by this Court. The sale grossed the sum of $262,-000.00. The disbursing agent duly appointed by the Court to receive and disburse the funds, filed his report with this Court projecting that the secured creditors, priority creditors, as well as unsecured creditors should in his judgment be paid in full, as well as all administrative costs and expenses if the sale was confirmed.

Pursuant to *Rule* 219, Counsel for the two noteholders filed applications for the allowance of attorneys' fees for services rendered to the noteholders in this Chapter XI proceeding. The applications were filed with detailed exhibits as to time expended, reserving to the applicants their objections to filing the same pursuant to *Rule* 219. These objections generally asserted the reason that this Court had no jurisdiction to consider and make a determination of the fees for Counsel for the respective deed of trust noteholders, since the notes themselves provided for a fixed contract amount payable to the noteholder for attorneys' fees and as such was not subject to alteration. Counsel contended that the notes providing a fixed sum was a matter of contract between the parties, to-wit: the maker (the Debtor herein) and the payee (noteholder) and therefore, was not subject to review, determination or revision by this Court.

Thereupon, this Court, in accordance with applicable law, as the Court had perceived it, overruled the objections, proceeded after proper notice, to hear [2] and determine what

---

2. "The District Court found (Appendix "B", page 674) that this court failed to accord counsel for the noteholders a hearing upon their application for fees. This finding was apparently made from statements or representations of Counsel for Flora in their argument upon the appeal. This finding is simply not supported by the facts and the record of this case. Contrary to this finding, this Court, upon receipt of the applications set the same for hearing along with application to fix auctioneer's fees, at which time Counsel for the first and second lien noteholders as well as Counsel for the Debtor and Creditors' Committee ap-

peared and argued the merits of the petitions. The noteholder's counsel made full and complete statements for the record of their respective positions both on the facts contained therein and the law applicable thereto, the Clerk's docket entries (a copy attached hereto as appendix "C") support these facts and reflects that on "10/25/(78)", "Hearing held; auctioneer's fees and attorneys' fees taken under advisement." The docket sheet further reflects the filing of Memorandum of Law by the Creditors' Committee Counsel as to the allowance of these fees on 1/8/79 and this Court's Opinion and Order of allowance entered 4/11/79. (The

amount should be fixed as a reasonable fee to Counsel for services rendered to the deed of trust note creditors in the collection thereof. The services rendered consisted primarily of the filing of the Complaint seeking relief from the stay of *Rule* 11–44 to permit foreclosure of the deeds of trust, overseeing the progress of the Chapter XI proceeding through its several hearings and final consideration of the plan, liquidation and payment of the proceeds upon their respective notes in full of principal and interest as contemplated by the plan by the Disbursing Agent. This Court, after mature consideration of the applications and exhibits, Memoranda and arguments of counsel rendering a joint opinion and order, fixing in each case, the sum of $2,000.00 attorneys fees for each noteholder as reasonable compensation for services rendered by counsel in collection of the notes in question. (A copy of the written opinion is attached hereto as Appendix "A".)

The allowance of the fees in full would have called for payment to the Bank 15% of the payoff amount of $71,866.12, totaling $10,779.92, and the payment upon the first deed of trust note to Flora of $112,409.70 or a total fee of $5,620.49. (Payment of these fees in full, according to an analysis filed with the Court by the Disbursing Agent would result in general unsecured creditors receiving only a fraction of their claims.[3]

Counsel for Flora filed their appeal to the District Court from the Order of this Court, in which the District Court reversed, holding that the fixed sum of 5% in the note was a matter of contract between the parties and not subject to a review, determination or revision by this Court. (A copy of this Opinion is affixed hereto as Appendix "B".)

After the District Court rendered its decision, Counsel for the Bank, pursuant to *Rule* 307, *supra*, filed its petition or motion for reconsideration of the claim of the Bank alleging that the Order of the District Court, which in effect had affirmed the initial position of Counsel for the Bank and Flora, warranted this Court's reopening and reconsidering the claim of the Bank, and that the said Bank should be allowed in payment of its claim the full contract attorney's fees of 15% of the amount collected to-wit: $10,779.92 because the original order was entered by the Bankruptcy Court as a result of a misapplication of the law.

After due notice to all interested parties, a hearing was held upon the petition for reconsideration. Appearing thereat was counsel for the debtor, Bank, Creditors' Committee and the disbursing agent in person. The Court took under advisement the objections to the petition for reconsideration and proceeded to hear the case on its merits as provided by *Rule* 307.

*Rule* 307, *Rules of Bankruptcy Procedure*, provides that a party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate which the Court may consider upon a hearing after due notice. Upon hearing, the Court may make such further orders as are appropriate.

*Rule* 307 is derived from and a substantial revision of Section 57k. *Bankruptcy*

---

allegation as to a lack of an opportunity to be heard, was brought to this Court's attention for the first time by the findings of the District Court (Appendix "B").)

3. "This Court recently, in a similar case, confirmed a Chapter XII plan selling, free of liens, with such liens to be impressed upon the proceeds, a 1200 acre farm including a $700,000.00 deed of trust with note providing 15% attorney's fees. The sale grossed approximately $850,000.00, and paid all creditors 100%. This court, as it perceived the law, allowed Counsel for the deed of trust note creditor a fee of $10,000.00. The services rendered were similar to the services rendered in this case, to-wit: filing a Complaint seeking relief from the stay, following the proceedings through confirmation of the plan, liquidation of the assets under the jurisdiction of the Court, and receipt of the principal and interest in full. Likewise, as was true here, neither the validity nor amount was ever questioned. Allowance of the fifteen percent expressed in the note would have resulted in payment of counsel fees in excess of $100,000.00. General creditors would have realized little if any payment upon their claims. Cf. Re: *BAIN* (6th Cir. 1975) 527 F.2d 681."

*Act* (11 U.S.C. Section 93k). This Section is as follows:

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed."

The Advisory Committee's Note to *Rule* 307 in part is as follows:

"This rule is a substantial revision of § 57k of the Act and General Order 21(6). Because these provisions have spoken only of the reconsideration of claims that have been allowed, it has sometimes been held that a referee has no jurisdiction to reconsider a disallowed claim, or the amount of priority of an allowed claim, at the instance of the claimant himself. See, e. g., *In re Gouse*, 7 F.Supp. 106 (M.D.Pa.1934); *In re Tomlinson & Dye, Inc.*, 3 F.Supp. 800 (N.D.Okl.1933). This view disregarded § 2a(2) of the Act and the "ancient and elementary power" of a referee as a court to reconsider any of his orders. *In re Pottasch Bros. Co., Inc.*, 79 F.2d 613, 616 (2d Cir. 1935); *Castaner v. Mora*, 234 F.2d 710 (1st Cir. 1956). This rule recognizes the power of the court, including a referee, to reconsider an order of disallowance on appropriate motion. Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court."

■ A motion or a petition for reconsideration is governed by *Rule* 914 as a contested matter adversary in nature. See 12 *Collier on Bankruptcy (Rules of Bankruptcy Procedure)* Section 307.02. Further, *Rule* 924 which incorporates *Rule* 60 *Federal Rules of Civil Procedure* is applicable where, as in this case, the ten day period for taking an appeal has, of course, expired. *Rule* 60(b) FRCP provides and enumerates several grounds for granting relief from a final judgment order or decree.

Subparagraph (6) provides that relief may be granted for:

"[A]ny other reason justifying relief from the operation of judgment."

Counsel for the Bank in this case contends that this Court's misapplication of the law relating to attorney's fees provided in a deed of trust note in the identical cases of Flora and the Bank is a case of such a nature, that the Court should grant a reconsideration of the judgment; that as provided in the Advisory Committee Note, *supra*, it rests in the sound discretion of the Court.

■ The original Opinion (Appendix "A") in both the Flora and Bank cases, not only treated them similarly, but in fact, a Joint Opinion and Order upon the merits was entered holding that a $2,000.00 fee to Counsel for each creditor was reasonable, and of course holding of necessity, that the Court had the power and duty to assess and fix only a "reasonable fee". The District Court now having held that this Court was in error, the misapplication of the law initially was extremely prejudicial to the Bank's interest and its right to claim its attorney's fees, even though its particular order was not appealed.

Accordingly, believing this is an appropriate case for relief and the exercise of its discretion, this Court agrees and hereby ORDERS reconsideration and hearing pursuant to said *Rule* 307.

Upon hearing of the petition to reconsider, as heretofore stated, Counsel for the Bank, Debtor and Creditors' Committee, as well as the Disbursing Agent in person, appeared. Counsel for the Creditors' Committee contended that the case should be governed by the recent Fourth Circuit Opinion in *Allen, et al. v. United States, et al.* and *Carini, et al. v. United States, et al.*, 606 F.2d 432 (4th Cir. 1979); that *Allen* and *Carini* was decided after the District Court's Decision, and therefore, was not available to and the District Court did not have the benefit of this decision when its Decision was rendered reversing this Court. It was the contention of Counsel for the Creditors' Committee and the Debtor that the broad language in *Allen* and *Carini* reaffirmed the historical rule and placed

the matter of all attorney's fees under the supervision and jurisdiction of the Courts and, therefore, the Court's fixing of a reasonable fee in the sum of $2,000.00 should be reaffirmed upon this rehearing and reconsideration.

■ This Court has carefully read and considered the Opinion in *Allen* and *Carini* and, although the Opinion sets out the board general principles as to attorneys' fees and the Court's duty to fix their reasonableness, it does not deal with the specific factual circumstance here involved. There was a definite contract for the payment of a fixed percentage fee between the attorney and client. This may in fact be much broader than a case where funds are disbursed under bankruptcy proceedings where equitable principles are invoked for the benefit of all creditors. This Court, also feels that the cases are persuasive for the general principles applicable to attorney's fees and the traditional rules enunciated over the years in the numerous cases dealing with this subject. However, the clear holding of the District Court as to the principles of fixed contract rights compels adherence.

This Court heretofore had perceived the law in the field of attorney's fees and the allowance thereof, to be a rule of reasonableness. The Court had reviewed, with much care, the authorities in the field before arriving at this conclusion. Some of which authorities are as follows:

In the Landmark Case: *Security Mortgage Co. v. Powers, Trustee* (1928) 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236, 13 AM.B.R. (N.S.) 656, Justice Brandeis, rendered the decision for the Court.

A Florida Bankrupt owned real estate in Georgia subject to a deed of trust given to secure purchase money notes to Hanson Motor Co., for $90,000.00 plus interest. The Trustee in Bankruptcy sought as the Debtor here, and was granted leave to sell the property free of liens with such liens to be impressed upon the proceeds. Before and after Bankruptcy, the notes were held by Security Mortgage Company. The holder interposed no objection to the sale since their lien was impressed upon the proceeds. It asked for its payment in full with interest along with $9,442.40 attorney's fees provided for in the note to-wit:

"With interest after maturity until paid at 8 percent per annum with all costs of collection, including 10 percent as attorney's fees, if collected by law or through an attorney at law."

Prior to sale by the trustee, Security Mortgage Co. secured judgment in State Court of Georgia for the principal and interest and for $9,442.40 attorney's fees. The judgment declared these items to be a special lien upon the property. This procedure complied with the law of Georgia.

The Bankruptcy Court allowed the attorney's fees over the objections of the Trustee. The District Court reversed and disallowed the fees. This disallowance was affirmed by the Fifth Circuit (21 F.2d 965—10 AM.B.R. (N.S.) 656). The Supreme Court, in what now has become a landmark decision, Reversed, sustaining the decision of the Bankruptcy Court. The Court held that the validity and construction of the attorneys' fees provision was a matter of State law but the extent of its enforceability is a Federal question under Federal Bankruptcy Law.

The rule enunciated in *Security Mortgage Co., supra,* was the settled law of the 4th Circuit long before this decision in 1928.

In *Chesterton Bank of Maryland v. Walker* (4th Cir. 1908) 163 F. 510, 20 AM.B.R. 840, the Court held that the question of the validity and construction of the terms of a note for payment of attorney's fees was a question of the State law of Maryland but that the allowance under Federal Bankruptcy law was a matter of Federal law which required the allowance of a reasonable amount even where the stipulation called for " . . . a five percent commission for collecting the same."

The Court enunciated the policy in such matters in the following language:

"Is [it] to be construed that Mrs. Walker was to pay this five percent, amounting to over $1,400.00, to this bank in addition to principal and interest, regardless of whether or not it had incurred any such cost of collection? Certainly not, but it is to be construed that she was to pay such commissions to the extent of five percentum in case the bank *reasonably* had to incur any liability for and pay such commissions, not otherwise." (emphasis added)

In 1935 the Fourth Circuit in *Citizens National Bank of Orange, Virginia, et al. v. Waugh* (4th Cir. 1935) 78 F.2d 325 the late distinguished Judge Parker speaking for the Court, reaffirmed the Rule in the Fourth Circuit. The note provided for 10% attorney's fees, which was void in West Virginia, but valid in Virginia. Its enforcement was sought in the District Court of West Virginia and denied. Judge Parker, speaking for the Court reversed thusly:

"But there is no statute in West Virginia which would invalidate a provision of this character or forbid its enforcement in the courts. Recovery was denied upon it, because of the holding of the West Virginia courts that such recovery is contrary to the public policy of that state and because the judge below was of opinion that the federal courts are bound to follow the decisions of the courts of the state in such matters. In this we think there was error. The question involved is not a matter of statutory construction but of general law, as to which the federal courts exercise their independent judgment. The declaration of public policy by a court with respect to such a provision is but a decision with respect to the principles of the general commercial law applicable to its validity; and nothing is better settled than that, with respect to such matters, the federal courts exercise an independent judgment and are not bound by the decisions of state tribunals. *Swift*

*v. Tyson*, 16 Pet. 1, 10 L.Ed. 865; *Township of Pine Grove v. Talcott*, 19 Wall. 666, 22 L.Ed. 227; *Oates v. First National Bank*, 100 U.S. 239, 246, 25 L.Ed. 580; *Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867; *Appleby v. City of New York*, 271 U.S. 364, 46 S.Ct. 569, 70 L.Ed. 992; 27 R.C.L. 52. And the rule is not avoided by the declaration of a state court that its decision is grounded in public policy; for it is equally well settled that in matters of general law the federal courts determine such matters of public policy for themselves in deciding whether a contract is contrary thereto. *Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.*, 276 U.S. 518, 48 S.Ct. 404, 407, 72 L.Ed. 681, 57 A.L.R. 426; *Hartford Fire Ins. Co. v. Chicago, M. & St. Paul R. Co.*, 175 U.S. 91, 100, 20 S.Ct. 33, 44 L.Ed. 84; *Lake Shore & M.S.R. Co. v. Prentice*, 147 U.S. 101, 106, 13 S.Ct. 261, 37 L.Ed. 97; *Liverpool & G. W. Steam Co. v. Phenix Ins. Co.*, 129 U.S. 397, 442, 9 S.Ct. 469, 32 L.Ed. 788; *New York Cent. R. Co. v. Lockwood*, 17 Wall. 357, 368, 21 L.Ed. 627; *Interstate Compress Co. v. Agnew* (C.C.A. 8th) 255 F. 508; *Mechanics'—American Nat. Bank v. Coleman* (C.C.A. 8th) 204 F. 24, 28; *Gordon v. Ware Nat. Bank* (C.C.A. 8th) 132 F. 444, 67 L.R.A. 550; *Sheppey v. Stevens* (C.C.) 177 F. 484; *Eells v. St. Louis, etc., R. Co.* (C.C.) 52 F. 903."

The Court laid down at page 331 the following Rule:

"In the light of these decisions and the overwhelming weight of authority in the state courts, we hold the rule to be (1) that a provision in a promissory note for the payment of attorneys'. fees for services actually rendered in collection is not to be condemned as contrary to public policy, *if reasonable* in amount and not used as a cloak for usury or other forbidden transaction; (2) that such a provision is enforced as a contract of indemnity

and the amount stipulated therein is not absolutely binding on the parties or on the court, but will be enforced to the extent that it provides for a *reasonable attorneys' fee* for services actually rendered in accordance with its terms; and (3) that, where services have been rendered and the amount stipulated is not obviously excessive, the stipulation as to the amount should govern." (emphasis added)

As to the State Court's governing the decision in the Federal Bankruptcy Court, the distinguished Judge stated at Page 334:

"In applying the common law, the federal courts must decide what the law is in the light of the well-settled rule that decisions are mere evidences of the law and not the law itself. Decisions of the local courts are, of course, entitled to great respect as evidences of the law; but, if they have departed from the principles of the common law, it is the duty of the federal courts to follow the law rather than them. One of the principal purposes of the creation of the federal courts was to establish impartial tribunals which would not be subject to local influences; and, if this purpose is to be attained, they must be allowed to exercise an independent judgment on the law as well as on the facts of the cases before them."

In 1936 in the case of *Tawney v. Clemson, et al.* (4th Cir. 1936) 81 F.2d 300, 30 AM. B.R. (N.S.) Pg. 249, when this issue was presented, the late Judge Soper, citing *Security Mortgage Company, supra,* reaffirmed the Rule of reasonable fees in the Fourth Circuit as a matter of Federal law not to exceed the specified amount contracted for in the note.

Again in 1952, in the case of *Brown v. Security National Bank of Greensboro, et al.* (4th Cir. 1952) 200 F.2d 405, the Fourth Circuit in an almost identical case was presented with this question. In this case Judge Parker was reviewing a provision of

a deed of trust note which was paid through the reorganization court proceeding with a provision that the expense of collection would include any and all attorney's fees incurred. Counsel for the noteholder requested a $10,000.00 fee. The Lower Court allowed $8,000.00. There was evidence that the services were worth $12,500.00. In affirming the decision over objections of the Trustee, the Court stating that the law of South Carolina recognized and provided for attorney's fees and that the allowance of $8,000.00 as a reasonable sum for services rendered to the deed of trust noteholder was proper.

For further cases in support of this position, see the annotation in 161 A.L.R., page 982, and a further collection in 17 A.L.R.2d, page 307.

The foregoing is also the Rule of the Second Circuit, *See In Re: Kashmir Refinancing Company* (2d Cir. 1938) 94 F.2d 652. See also *In Re: Bain* (6th Cir. 1975) 527 F.2d 681; *Rubenstein v. Nourse* (8th Cir. 1934), 70 F.2d 482, 25 A.B.R. (N.S.) 634; *In Re: Pack-It* (D.C.N.J.1958) 158 F.Supp. 148; *In Re: Gossage* (B.C.Mo.1975) 1 BCD 1539); *In Re: Crowder* (E.D.Ark.1969) 301 F.Supp. 1102. See also 3A *Collier,* Section 63.15(1); 6 *Remington on Bankruptcy* Section 2605.1 and numerous cases cited in the 1978 Pocket Part commencing at Page 41.

These are the authorities which this Court had followed in the original opinion in this case, the decision of the District Court is, of course, the rule of decision in the reconsideration of the Bank's claim and governs.

Accordingly, it is

ADJUDGED AND ORDERED that the Disbursing Agent, Ernest L. Light, disburse to the Farmers and Merchants Bank as and for its attorney's fees as provided in its note of 15% of the amount of principal and interest paid heretofore being the sum of $71,-866.12, to-wit: $10,779.92, less the $2,000.00 previously paid.

APPENDIX A
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

IN RE:                   )   In Proceedings for an
                          )   Arrangement under Chapter XI
      CRAFTY FOX, LTD.      )
                          )   No. 77–00164
         DEBTOR          )

FARMERS AND MERCHANTS BANK   )
                          )
         Plaintiff         )
                          )
                          )   Complaint No. 1
v.                       )
                          )
CRAFTY FOX, LTD.          )
      Defendant       )

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

and

                          )
LLOYD D. FLORA           )
                          )
         Plaintiff         )
                          )   Complaint No. 2
v.                       )
                          )
CRAFTY FOX, LTD.          )
                          )
      Defendant       )

## MEMORANDUM, OPINION AND ORDER

**H. CLYDE PEARSON,** United States Bankruptcy Judge.

Application has been filed herein for the allowance of attorney's fees for two secured creditors by Donald L. Wetherington, Esquire, of Wetherington, Flippin, Melchionna, Bosserman & Burton, counsel for the first deed of trust noteholder, Lloyd and Reba A. Flora (Flora); and Ralph B. Rhodes, Esquire, Hutcherson & Rhodes, counsel for the second deed of trust noteholder, the Farmers & Merchants Bank of Boones Mill, Virginia (Bank).

Counsel for the Creditors' Committee herein by letter dated September 19, 1978, requested the Court to approve only such fees for counsel representing the secured creditors that are reasonable and justifiable from all the facts and circumstances.

Since the applications relate to first and second deeds of trust upon the identical property and are similarly related with similar issues of law and fact, so far as services rendered by counsel are concerned, the applications of Messrs. Rhodes and Wetherington will be treated together in this opinion.

By petition filed in this Court on February 23, 1977, the debtor corporation sought an arrangement with its general unsecured creditors under Chapter XI of the Bankruptcy Act. A plan was filed essentially providing for a sale of the assets of the debtor under the jurisdiction of the Court and payment of the proceeds to the creditors in accordance with their priorities. On June 12, 1978, upon hearing, following acceptance of the plan by the creditors, this Court confirmed the plan providing for the sale of all the debtor's property, both real

and personal. Sale was directed with payment of the proceeds derived therefrom to a disbursing agent. The order contained provisions providing for ample protection of the secured creditors' rights and interests.

A sale was held by an auctioneering firm at public auction, for the sum of approximately $262,000.00 which was deposited with the disbursing agent for satisfaction of claims in accordance with their respective priorities and amounts.

The result of the sale enabled the debtor to pay the Floras in full upon their purchase money note secured by a first deed of trust upon the real estate in its original amount of $100,000.00 in addition to interest as provided thereon to the date of payment by the disbursing agent. Likewise, payment in full was made to the Bank in the principal sum of $59,000.00 plus interest as accrued to the date of payment. The matter of attorney's fees in each was reserved for decision of this Court.

In both Flora and Bank's obligation, counsel in their application for fee, sets forth extensive time consumed in various phases of their representation. In both, counsel seeks the amount provided in the note secured by the first and second deed of trust. The Flora note provides for five (5) percent of the amount collected, in addition to expenses of $56.99. The application of Mr. Rhodes, counsel for the Bank, requests the amount set forth in its note of fifteen (15) percent collection fee and $15.00 attorney's fee. A computation based on the claims filed herein by the Floras of approximately $108,000.00 and the Bank of approximately $70,000.00 would result in a fee for counsel for the Floras in excess of $5,000.00 and for counsel for the Bank in excess of $9,000.00.

Both the Floras and the Bank, by counsel, filed herein following the institution of the Chapter XI proceedings, complaints as ad-versary proceedings pursuant to Bankruptcy Rule 11–44(d) [1] seeking relief from the stay invoked upon the filing of the petition herein which stays all creditors from in any wise proceeding against the debtor or his property. The complaints set forth the secured nature of their claims in their respective cases. During the progress of the Chapter XI arrangement proceeding, the thrust of the proceeding was to dispose of the assets of the debtor to the best advantage of the general creditors with ample protection of the rights and interests of the secured creditors. Ultimately, the confirmed plan resulted in said sale and payment in full of principal and interest of both the first and second deed of trust notes.

During the course of the proceedings, it appeared and was never seriously questioned that the said deeds of trust were amply and fully secured by the assets constituting collateral therefor. This fact was ultimately established from the sale thereof. The confirmed plan which will pay general creditors, excluding certain subordinated claims, confirms the wisdom of the creditors' acceptance and the Court's confirmation of the Chapter XI plan.

An appendix is attached to each of the respective applications detailing the time expended while representing the noteholders. Mr. Rhodes' application certifies 48½ hours. Mr. Wetherington's application certifies approximately 85 hours. There are numerous entries on both applications of appearances in the Chapter XI proceeding. The attendance at board meetings of the Bank as well as time expended in research in support of the memorandum and application for fee were set forth in Mr. Rhodes' application. Mr. Wetherington's application likewise contains numerous entries of time expended in the general ongoing of the Chapter XI proceeding, attending court, as well as numerous interoffice conferences

---

1. (d) *Relief from Stay.* Upon the filing of a complaint seeking relief from a stay provided by this rule, the bankruptcy court shall, subject to the provisions of subdivision (e) of this rule, set the trial for the earliest possible date, and it shall take precedence over all matters except older matters of the same character. The court may, for cause shown, terminate, annul, modify or condition such stay. A party seeking continuation of a stay against lien enforcement shall show that he is entitled thereto.

and telephone calls which, as in the case of Mr. Rhodes, were not, directly related to the complaint filed or the secured claims in and of themselves. Also, Mr. Wetherington's application includes research and time in preparation of the memorandum and application for fee in this case. These appendixes are attached hereto; Mr. Rhodes' summary as Appendix "A" and Mr. Wetherington's as Appendix "B".

The Flora deed of trust note with reference to attorney's fees, contains the following:

"If the debt hereby evidenced be not paid as it matures and is collected by suit or attorney, it is further agreed that there shall be paid hereunder as an attorney's fee for such collection 5% of the amount then due which is hereby agreed upon as a reasonable charge."

The Bank's deed of trust note provides: "If this note is not paid at maturity and is collected by suite or attorney, the makers and endorsers hereof agree to pay in addition to the amount of this note 15 percent collection fees and fifteen dollars attorney's fees."

Neither deed of trust contains a specific provision with reference to attorney's fees, except the incorporation within the body of the instrument of Va.Code § 55–59(2) as follows:

"The grantor shall be deemed to covenant that he will pay all taxes, levies, assessments and charges upon the property, including the fees and charges of such agents or attorneys as the trustee may deem advisable to employ at any time for the purpose of the trust, so long as any obligation upon the grantor under the deed of trust remains undischarged."

The law with reference to the fixing of allowances of attorney's fees in these proceedings generally places the burden upon the Bankruptcy Court to determine and allow a fee for counsel in these instances in an amount that is "reasonable". Prior to the 1938 amendment to Section 63 or the *Bankruptcy Act*, the courts generally disallowed attorney's fees to creditors even though provided for in the instrument evidencing the transaction. These cases generally erally held that the claims were contingent, unliquidated and therefore not provable under Section 63. The 1938 amendment, Section 63a(8) for the most part, eliminated these requirements for the provability of a claim, including attorney's fees, and provides:

"Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (8) contingent debts and contingent contractual liabilities;"

Accordingly, Bankruptcy Courts now recognize contractual stipulations for the payment of attorney's fees sought to be allowed. *Security Mortgage v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236. These are also enforceable in Virginia. *U. S. v. Seaboard Citizens National Bank*, 206 F.2d 62 (4th Cir. 1953); *Merchants & Planters Bank v. Forney*, 183 Va. 83, 31 S.E.2d 340 (1944).

3A *Collier on Bankruptcy*, Sec. 63.15, pg. 1854, the author, after reciting generally the recognition of the stipulation for fees by the Bankruptcy Court, states further "the difficulty or simplicity of the matter may be considered when it comes to determining the amount of the fees." In this respect the precedents allowing the Bankruptcy Courts to reduce the stipulated fees to a reasonable compensation for the services actually rendered and covered by the stipulation, have retained all their value. The author goes on to state that the fixing of such fees should be predicated upon the broad equitable powers of Bankruptcy Courts rather than relegated to the peculiarities that may exist on this subject in the respective states.

Some authorities have delineated a difference between the fixing of attorney's fees as stipulated in the note and those in the security instrument. In the first instance, the stipulations in the note have been treated in bankruptcy proceedings as claim payable out of the general funds administered in the Bankruptcy Court upon proper claim or application. The stipulation

in the security instrument represents a portion of the secured debt, which is payable as a part thereof. See *Speiser, Attorney's Fees* § 15.11. Whether the consideration of the fees are viewed and determined from the note or the secured instruments in both cases herein, (Flora and the Bank's) a determination as to what is "reasonable" must be the guideline which this Court has to follow. In the first instance the sums allowable are payable out of general funds and in the second instance section 55-59(2) makes no specific sum allowable.

Prior to Federal Bankruptcy Rule 219(c) [2] which became effective October 1, 1973, this Court was governed by local Rule 16 of Court promulgated in 1930 with its admonishing language.[3]

Counsel in their respective memorandums of authority in support of their application for counsel fees, have urged the Court to recognize that the fixed percentage in the note should be adopted as the standard for fixing a fee in each instance. Cited in support thereof is a recent case of *Schwab v. Norris*, 217 Va. 582, 231 S.E.2d 222 (1977), for the principle that the Virginia Supreme Court has held that 18% attorney's fee incorporated in the instrument in that case was contractual and not subject to being altered. However, *Schwab* was not dealing with the payment of fees from funds under the Court's control. See *Michie's Jurisprudence*, Section 29, *Payment out of Funds Under Court's Control*, where the following is stated:

"Where trustees in good faith engage counsel to aid them in the execution of the trust, they are entitled to pay counsel out of the trust fund, or to be reimbursed out of that fund for all expenses which they have incurred, including *reasonable attorney's* fees." (emphasis added)

See also *In Re: Gossage*, 1 B.C.D. 1539.

Further, a careful reading of *Schwab* reflects that the Court did not find that the 18% was either questioned as being unreasonable or was in fact unreasonable as that Court had previously held in *Richardson v. Breeding*, 167 Va. 30, 187 S.E. 454.

In the recent case *In Re: Tina's, Inc.* (D.C.Conn.1974) 1 C.B.C. 385, in a similar proceeding under Chapter XI where a secured creditor sought attorney's fees. The Court, in a lengthy opinion, reviewed the standards which govern the Bankruptcy Court in fixing these allowances. This opinion states the universal rule that is laid down in all cases involving the fixing of allowances, that economy is the hallmark of Bankruptcy proceedings and the interest of creditors and the payment upon their claims should be paramount in fixing allowances payable out of funds otherwise due creditors. However, contrasted with the forgoing principle is a further admonition that counsel in Bankruptcy proceedings must be reasonably compensated with adequate fees in order to insure that competent counsel will continue to render service in the Bankruptcy Court. Between the forgoing principles rests the responsibility of the Court to fix a fee that will withstand the test in each

2. *Bankruptcy Rule* 219(c). Factors in Allowing Compensation.
   (1) *General.* The compensation allowable by the court to a trustee, receiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.
3. *Bankruptcy Rule* 16. Allowances to Counsel. There has been considerable complaint in some parts of this district concerning unreasonably large allowances made by referees to counsel in bankruptcy cases. Usually no creditor has suf-

ficient interest in a bankrupt estate to protest against too large allowances, and it is therefore all the more obligatory on the referee, of his own motion and however unpleasant the task may be, to rigorously see to it that allowances made to counsel are strictly reasonable. Throughout the bankruptcy act and in all well-considered decisions bearing on the subject, an economical administration of estates in the bankrupt court is insisted upon. It is the duty of the referees to carry out fully the spirit of the law in this respect. If counsel think the allowances made them are too illiberal, they are quick to apply for a review. Errors in the other direction are very rarely corrected, and give rise to much justifiable criticism in *pais*.

case. In this area of the law the task of placing a value on another person's services is not only burdensome but in many instances an unpleasant one as envisioned by *Court Rule* 16, supra.

In the case of *Tina's,* supra, the Court stated that services rendered and performed were solely for the benefit of the secured creditor and of no benefit to the estate. The objective was to protect the secured creditor's secured interests. This is essentially true in the application of counsel for Flora and the Bank. The entire services rendered by counsel was in behalf of and for the protection of the rights and interests of the secured creditor.

A review of the summary of time expended would indicate that great diligence was used by counsel for both creditors in their representation of the interests of their respective secured creditor. Obviously, much time was expended in sundry areas in their efforts; however, this Court can only fix an allowance payable out of the estate which must reflect necessary time and services expended and that time and services otherwise expended in unnecessary efforts in behalf of creditors cannot be compensated. *In Re: Consolidated Distributors, Inc.* (2 Cir. 1924) 298 F. 859, 3 AMBR (NS) 123, *Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165.

There are examples of time expended as set forth in the appendixes which the Court feels represented diligence on the part of counsel; nevertheless, was an unnecessary expenditure of time in connection with the necessary protection of the secured creditors' interests in these proceedings. This Court is commanded to consider only that which is necessary in fixing an amount herein. Counsel for the Bank alludes to numerous attendances at Bank board meetings which was obviously unnecessary as well as appearances in court in connection with the ongoing Chapter XI proceeding. Similarly, the summary of time expended by counsel for the Floras lists time spent in attending court, inter-office conferences and activities which represent diligence on their part in behalf of their client's interests, but under the law applicable to these proceedings, is not compensable in terms of fixing a reasonable fee for services rendered and time expended in the premises. Time expended is only one factor to be considered. *Re: Hardwick, etc.* (1973 D.C. Pa.) 355 F.Supp. 58. This Court is not bound by any fixed or contingent fee contract. *Carter v. Woods* (1977 D.C.Mo.) 433 F.Supp. 291. For extensive annotation as to reasonableness of fees see 6 *Rem.* § 2671.

Accordingly, after careful review and consideration of the applications in each case, it is the considered judgment of the Court that a reasonable fee for services in each case is the sum of TWO THOUSAND DOLLARS ($2,000.00) to counsel for the Floras and TWO THOUSAND DOLLARS ($2,000.00) to counsel for the Bank, and it is so

ORDERED.

Service of a copy of this Memorandum, Opinion and Order shall be by mail to the debtor, Crafty Fox, LTD.; the debtor's attorney; Donald L. Wetherington, Esquire, counsel for Lloyd and Reba A. Flora; and Ralph B. Rhodes, Esquire, counsel for the Farmers & Merchants Bank of Boones Mill, Virginia.

Dated: April 11, 1979
gh

(s) H. CLYDE PEARSON
UNITED STATES
BANRKUPTCY JUDGE

Re: Crafty Fox, Ltd., In Proceedings for an Arrangement under Chapter XI
No. 77–00164

TIME RECORD:

| | | | |
|---|---|---|---|
| 11/3/76 | 1 | hr. | Review with Bank; letter to Ring; check bond and deed of trust; |
| 11/6/77 | 1 | hr. | Preparation of advertisement for foreclosure sale of property; obtaining addresses and advertisement rates; letter of foreclosure to Ring; |

| | | | |
|---|---|---|---|
| 1/24/77 | 1 | hr. | Discussion with Ring's Attorney as to bankruptcy; discussion with Bank after review of file; |
| 3/14/77 | 1 | hr. | Preparation and filing of Claim in Bankruptcy; discussion with Bank; |
| 3/15/77 | 1½ | hrs. | Discussion and conference with Board of Directors of Bank; |
| 3/29/77 | 2 | hrs. | Traveled to Roanoke; attended first meeting of Creditors; letter to Bank; |
| 5/24/77 | 2 | hrs. | Traveled to Roanoke; attended meeting of Creditors; letter to Ring's attorney as to amount owed Bank; |
| 6/29/77 | 2 | hrs. | Traveled to Roanoke; attended meeting of Creditors; letter to Bank; |
| 8/9/77 | 3 | hrs. | Traveled to Roanoke; attended meeting of Creditors; ltr. to Bank Reviewed Bankrupt's plan; discussion with Wetherington; |
| 8/20/77 | 2 | hrs. | Preparation and filing of Complaint in Bankruptcy Court; |
| 9/5/77 | 2 | hrs. | Review answers; preparation of hearing on 9/6/77; discussion with Bank; |
| 9/20/77 | 2 | hrs. | Traveled to Roanoke; attended hearing; letter to Bank; |
| 10/26/77 | 2 | hrs. | Traveled to Roanoke; attended hearing; letter to Bank; |
| 11/14/77 | 2 | hrs. | Meeting with Board of Directors of Bank; meeting with two Bank appraisers; reviewed plan submitted by Bankrupt's attorney; reviewed Complaint of Flora; |
| 12/20/77 | 3 | hrs. | Meeting with Bank appraiser; traveled to Roanoke; attended Hearing; letter to Bank; |
| 1/7/78 | 1 | hr. | Reviewed Complaint; advised Board of Directors of Bank of proceedings; discussion with Bounds and Wetherington; |
| 2/10/78 | 2 | hrs. | Travel to Roanoke; attended Hearing; letter to Bank; |
| 3/6/78 | 2 | hrs. | Travel to Roanoke; attended Hearing; letter to Bank; |
| 3/8/78 | 2 | hrs. | Preparation of Motion for Judgment against endorser, Ring; Discussion with Bank and Ring's attorney, Bounds; research "Bonds"; |
| 4/25/78 | 2 | hrs. | Traveled to Roanoke; attended Hearing; letter to Bank; |
| 5/23/78 | 2 | hrs. | Traveled to Roanoke; attended Hearing; letter to Bank; |
| 6/12/78 | 2 | hrs. | Traveled to Roanoke; attended Hearing; letter to Bank; |
| 7/12/78 | 1 | hr. | Advising Board Directors as to sale and bidding thereon; Review of file; |
| 7/19/78 | 2 | hrs. | Attending and advising Board of Directors at sale; discussion with Trustee & bankrupt atty. as to pay-off figures; |
| 7/29/78 | 1 | hr. | Received & reviewed objection to claim; advised Bank and research; |
| 8/23/78 | 4 | hrs. | Traveled to Roanoke; attended Hearing; research in Law Library as to collection fees and attorney fees allowable; |

48½ hrs.

| | | | |
|---|---|---|---|
| 3/7/77 | Letter to Mr. Flora | DLW | .5 |
| 3/7/77 | Office conf. and review copies of document re: $100,000 loan | DLW | .7 |
| 3/9/77 | Review d/t and short letter; Request copy of recorded d/t from Franklin County | DLW | .5 |
| 3/11/77 | Bankruptcy Ct. to examine file | DLW | .4 |
| 3/14/77 | Letter to Mr. Flora—Mrs. Richardson re: d/t | DLW | .5 |
| 3/21/77 | Telephone conv. w/Mr. Flora | DLW | .2 |
| 3/28/77 | Review Bankruptcy Law; prepare proof of claim; Letter to Bankruptcy Ct.; Telephone conv. w/Mr. Flora | DLW | 1.5 |
| 3/29/77 | Appearance before Bankruptcy Ct.; Conf. w/Mr. Flora and Mrs. Richardson | DLW | .7 |

| | | | |
|---|---|---|---|
| 4/28/77 | Telephone conv. w/John Renick;  Letter to Loyd Flora | DLW | .7 |
| 4/29/77 | Telephone conv. w/Joseph Bounds | DLW | .2 |
| 5/1/77 | Letter to Joseph Bounds | DLW | .4 |
| 5/23/77 | Confirm time for hearing | DLW | .3 |
| 5/24/77 | Appear Bankruptcy hearing;  conf. w/Mr. Flora, Mrs. Richardson, Mr. and Mrs. Hawkins;  Letter to the Hawkins' and Mr. Flora | DLW | 1.0 |
| 6/1/77 | Letter to Mrs. Richardson | DLW | .2 |
| 6/10/77 | Telephone conv. w/Mrs. Richardson | DLW | .2 |
| 6/18/77 | Compute loan balance and letter to Joseph Bounds | DLW | .5 |
| 6/24/77 | Telephone conv. w/Mr. Flora | DLW | .3 |
| 6/29/77 | Attend hearing at Bankruptcy Ct. | DLW | 1.5 |
| 8/1/77 | Telephone conv. w/Mrs. Flora;  Telephone conv. w/Joseph Bounds;  Letter to Mr. Flora | DLW | 1.0 |
| 8/8/77 | Place call to Joseph Bounds; | DLW | .3 |
| 8/9/77 | Appear at continuing meeting of creditors | DLW | 1.0 |
| 8/15/77 | Place call to Dusty Rhodes | DLW | .2 |
| 8/16/77 | Telephone conv. w/Dusty Rhodes | DLW | .3 |
| 8/17/77 | Letter to Rhodes re: foreclosure;  obtain sample pleadings for Rhodes | DLW | .7 |
| 9/14/77 | Telephone conv. w/Joseph Bounds;  Research law of Chapter XI | DLW | 1.1 |
| 9/13/77 | Telephone call to Joseph Bounds;  Telephone call from Lloyd Flora | DLW | .3 |
| 9/16/77 | Office conf. w/Betty Jo Richardson | DLW | .3 |
| 9/19/77 | Office conf. w/Mr. Flora and Betty Jo Richardson | DLW | .6 |
| 9/21/77 | Telephone call to Joseph Bounds' office | DLW | .2 |
| 9/22/77 | Conf. w/John Renick in his office;  Telephone conv. w/John Renick | DLW | .5 |
| 9/24/77 | Telephone conv. w/Mrs. Richardson | DLW | .3 |
| 10/8/77 | Research; conf. w/Frank Flippin | DLW | .4 |
| 10/18/77 | Conf. w/Donald Wetherington re:  complaint | RTB | .4 |
| 10/19/77 | Review file re: complaint;  Telephone conv. w/Bankruptcy Ct.;  Trip to Bankruptcy Ct. to review file for lien creditors | RTB | 1.4 |
| 10/20/77 | Preparation of complaint; proof draft | RTB | 1.7 |
| 10/24/77 | Finalization of complaint | RTB | .5 |
| 10/18/77 | Conf. w/Bob Bosserman | DLW | .4 |
| 10/19/77 | Telephone conv. w/Mrs. Richardson;  Telephone call from Lloyd Flora | DLW | .6 |
| 10/22/77 | Review Pleading | DLW | .5 |
| 10/24/77 | Review Pleadings | DLW | .5 |
| 10/26/77 | Attend hearing at Bankruptcy Ct. | DLW | 1.7 |
| 10/27/77 | Letter to Joseph Bounds | DLW | .5 |
| 11/1/77 | Serve complaint and letter to Joseph Bounds | DLW | 1.0 |
| 11/6/77 | Verify return receipts from service of complaint | DLW | .2 |
| 11/13/77 | Conference w/Bob Bosserman | DLW | .2 |

| Date | Description | Initials | Hours |
|---|---|---|---|
| 11/14/77 | Letter to Bankruptcy Ct. re: service of process of complaint | DLW | .4 |
| 11/18/77 | Letter to Mr. Flora; Letter to Mr. Joseph Bounds; Review Agreement | DLW | 1.0 |
| 12/5/77 | Answer to Complaint from Justice Dept. | DLW | .2 |
| 12/19/77 | Telephone conv. w/Betty Jo Richardson | DLW | .3 |
| 12/20/77 | Telephone conv. w/Mason; Research; Attend hearing; Letter to Joseph Bounds; Letter to Flora | DLW | 2.5 |
| 2/1/78 | Letter to Joseph Bounds | DLW | .5 |
| 2/10/78 | Call Joseph Bounds; Letter to Mr. Flora; Telephone conv. w/Betty Jo Richardson; Letter to Joseph Bounds; Telephone conv. w/Joseph Bounds | DLW | 1.6 |
| 2/13/78 | Telephone conv. w/Joseph Bounds re: copies of complaints | DLW | .3 |
| 3/6/78 | Telephone conv. w/Betty Jo Richardson; attend hearing on Digger I controversy; Letter to Betty Jo Richardson | DLW | 1.3 |
| 3/13/78 | Telephone conv. w/Bill Mason | DLW | .3 |
| 4/19/78 | Letter to Joseph Bounds | DLW | .5 |
| 4/25/78 | Telephone conv. w/Joseph Bounds; Attend hearing at Bankruptcy Ct.; Telephone conv. w/Betty Jo Richardson on information of property listing | DLW | 2.0 |
| 5/1/78 | Letter to Mr. Flora; Letter to Mrs. Richardson on order received from Bankruptcy Ct. | DLW | .4 |
| 5/24/78 | Telephone conv. w/Bill Price on prospects of property's selling; place call to Dusty Rhodes; Two telephone conv. w/Dusty Rhodes; Place call to Bill Mason | DLW | 1.1 |
| 5/23/78 | Telephone conv. w/Betty Jo Richardson; attend Bankruptcy hearing | DLW | 1.5 |
| 6/5/78 | Review file and review Order; place call to Bill Mason | DLW | .3 |
| 6/9/78 | Telephone conv. w/Bill Mason; conf. w/Bob Bosserman; Telephone conv. w/Betty Jo Richardson; Memo to Bob Bosserman | DLW | 1.1 |
| 6/12/78 | Review file—prepare for hearing on plan for sale; Review court file, attend hearing, conf. w/Mr. Flora and Betty Jo Richardson, conf. w/Joseph Bounds; Memo to Donald Wetherington | RTB | 1.5 |
| 6/18/78 | Review file, order; Note to Jennifer | DLW | .4 |
| 6/12/78 | Telephone call to Bob Bosserman on outcome of hearing | DLW | .2 |
| 7/5/78 | Office conf. w/Mr. Flora; Telephone conv. w/Garland Sheets | DLW | .7 |
| 7/17/78 | Office conf. w/Mr. Flora; conf. w/Tom Burton | DLW | .4 |
| 7/13/78 | Telephone conv. w/Joseph Bounds | DLW | .3 |
| 7/12/78 | Conf. w/Bill Terry; Telephone conv. w/Dusty Rhodes; conf. w/Joseph Bounds; review petition | DLW | 1.0 |
| 7/14/78 | Research on attorney's fees | WWT | .5 |
| 7/12/78 | Conv. w/Judge Pearson about collection of attorney's fees | WWT | .6 |
| 7/13/78 | Research on Attorney's fees collection thru note | WWT | .7 |
| 7/22/78 | Review status and request mileage | DLW | .2 |
| 7/18/78 | Telephone call to Mr. Flora; Telephone call to Joseph Bounds; compute balance on loan; Telephone call to Dusty Rhodes | DLW | 1.2 |
| 7/20/78 | Follow up sale; Telephone call to Mr. Flora | DLW | .4 |

| Date | Description | Initials | Hours |
|---|---|---|---|
| 7/20/78 | Appearance at sale | DLW | 4.5 |
| 7/19/78 | Auction in Boones Mill | WWT | 4.5 |
| 7/25/78 | Conf. w/Bill Terry re: amended proof of claim | RTB | .3 |
| 7/24/78 | Telephone call to Clerk of Bankruptcy Ct.; further conv. w/Clerk | WWT | .2 |
| 7/25/78 | Review file re: filing claim; conf. w/Bob Bosserman | WWT | .5 |
| 7/31/78 | Proof letters | WWT | .3 |
| 7/27/78 | Proof of claim | WWT | .6 |
| 7/28/78 | Proofread proof of claim | WWT | .1 |
| 7/26/78 | Consultation w/Donald Wetherington | WWT | .2 |
| 7/24/78 | Conf. w/Donald L. Wetherington | ORM | .3 |
| 7/29/78 | Letter to Joseph Bounds; instructions | DLW | .4 |
| 7/28/78 | Review proof of claim; Letter to Mr. Flora; Conf. w/Bill Terry | DLW | 1.0 |
| 7/24/78 | Telephone conv. w/Mr. Flora about arranging financing; conf. w/Olin Melchionna, Jr. on tax implication; Letter to Joseph Bounds | DLW | 1.0 |
| 7/26/78 | Letter to Joseph Bounds; conf. w/Bill Terry | DLW | .5 |
| 7/26/78 | Conf. w/Bill Terry and research | DLW | .4 |
| 8/2/78 | Letter to Mr. Flora on extension of financing | DLW | .3 |
| 8/6/78 | Receive Order from Bankruptcy Ct.; Memo to Bill Terry | DLW | .3 |
| 8/14/78 | Conf. w/Bill Terry; Conf. w/Bill Terry | DLW | .6 |
| 8/1/78 | Filing amended Proof of Claim | WWT | .2 |
| 8/15/78 | Conf. w/Bill Terry on law | DLW | .3 |
| 8/11/78 | Bankruptcy Ct. for copies of Proof of Claim; Research at the Federal Ct. | WWT | 2.8 |
| 8/10/78 | Research on Attorney's Fees, Interest | WWT | 1.7 |
| 8/7/78 | Telephone conv. w/Mr. Flora on interest; Letter to Joseph Bounds | DLW | .6 |
| 8/11/78 | Conf. w/Bill Terry on general unsecured debts | DLW | .3 |
| 8/14/78 | Research at Federal Ct.; Consultation w/Donald Wetherington; Preparation of Brief (rough draft) | WWT | 5.7 |
| 8/15/78 | Proof memo; dictate and consultation w/Donald Wetherington | WWT | 1.5 |
| 8/16/78 | Proof last part of memo | WWT | .2 |
| 8/21/78 | Work on draft of memo | WWT | .3 |
| 8/21/78 | Conf. w/Bill Terry; Review memo; Review and edit memo | DLW | 2.5 |
| 8/22/78 | Final draft of Bankruptcy Ct. memo; Proof memo | WWT | 1.0 |
| 8/23/78 | Bankruptcy Ct. for Proof of Claim Objections | WWT | 1.7 |
| 8/23/78 | Conf. w/Bill Terry; prepare and appear in Bankruptcy Ct.; conf. w/Mr. Flora | DLW | 1.8 |
| 8/24/78 | Review Southeastern Banker's Law Institute booklet | WWT | .3 |
| 8/31/78 | Telephone conv. w/John Renick; Telephone conv. w/Lloyd Flora | DLW | .4 |
| 9/16/78 | Application for attorney's fees; Checking Bankruptcy Ct. file for attorney's fees; dictate application for attorney's fees | WWT | 1.5 |

| | | | |
|---|---|---|---|
| 9/5/78 | Calculation of Attorney locating form | WWT | 1.2 |
| 9/7/78 | Conf. w/Bill Terry on application for attorney's fees | DLW | .4 |
| | Total Hours | DLW | 60.8 |
| | Total Hours | WWT | 23.6 |
| | Total Hours | RTBjr | 1.8 |
| | Total Hours | ORMjr | .3 |

Costs and Expenses:

| | |
|---|---|
| Clerk, Bankruptcy Court | $15.00 |
| Copies | 19.90 |
| C & P Telephone | 14.95 |
| Mileage | 7.14 |
| | $56.99 |

## APPENDIX B

### FINAL ORDER

The order of the Bankruptcy Court dated April 11, 1979 denying the attorney's fees as stipulated in the deed of trust is vacated, and the case is remanded to the Bankruptcy Court for further proceedings consistent with the Memorandum Opinion of the Court this day filed.

ENTER: This 24th day of August, 1979.

(s) JAMES C. TURK
Chief U. S. District Judge

### MEMORANDUM OPINION

This case involves the question of the extent to which the Bankruptcy Court is bound by a provision in a secured note awarding stipulated attorney's fees to the secured creditor in the event he finds it necessary to employ counsel for purposes of collection.

Crafty Fox, Inc. ("Crafty Fox"), on April 15, 1973, executed a "Deed of Trust Note" evidencing its indebtedness to the appellants, non-commercial lenders, in the principal sum of $100,000, an indebtedness which had resulted from its purchase from the

appellants of a certain parcel of land situated in Franklin County, Virginia. The note provided for 6½% interest on remaining balance, payable in quarterly installments beginning on October 15, 1973. Payment of principal was deferred until 1978, in which year the principal became payable in ten annual installments each due on April 15. Also included among the terms of the note, which had been prepared by counsel for Crafty Fox, was the following provision:

If the debt hereby evidenced be not paid as it matures and is collected by suit or attorney, it is further agreed that there shall be paid hereunder as an attorney's fee for such collection 5% of the amount then due which is hereby agreed upon as a reasonable charge.

As part of this same transaction, Crafty Fox, on 15 April, 1973 also executed a "Deed of Trust." The Deed recited that it was given "to secure payment of . . . one negotiable interest bearing note of even date herewith, made by Crafty Fox, Ltd.," as well as to secure Crafty Fox's performance of "all and several of the covenants herein set out." [1] This Deed was recorded on May 17, 1973.

---

1. The Deed went on to "impose and confer upon the parties hereto and the holder of said note hereunder all of the duties, rights and obligations prescribed in [Virginia Code § 55–59]." § 55–59 provides, in pertinent part:

§ 55–59. *How deed of trust construed; duty, rights, etc. of parties.*—Every deed of trust to secure debts or indemnify sureties, except so far as may be therein otherwise provided, shall be construed to impose and confer upon the parties thereto, and the beneficiaries

Crafty Fox ceased making its interest payments under the note after October 15, 1976 and, on February 23, 1977, it filed under the Bankruptcy Act a voluntary petition for a Chapter XI arrangement. On March 7, 1977, appellants consulted with and retained an attorney for collection of moneys due under the Note. The attorney filed a secured claim against the bankrupt estate for sums due under the Note and Deed, including therein claims for the entire principal, interest then accrued, and the stipulated 5% attorney's fee. Attached to this proof of claim was a copy of the Note and Deed hereinbefore described. A proposed plan of arrangement was filed on September 12, 1977 which provided for the sale of all Crafty Fox assets. Under this plan, appellants were to continue financing the principal sum of $100,000 at the 6½% interest rate provided for in the Note; said plan, however, contained no provision for the personal liability of the purchaser on the Note, and appellants objected. The plan ultimately failed when the proposed purchaser refused to comply with the contract for sale of the assets, and counsel for appellants then filed a complaint seeking relief from the automatic stay imposed under Bankruptcy Rule 11–44 in order that foreclosure could be had pursuant to the Deed of Trust.

A second plan was subsequently proposed and confirmed; this plan too provided essentially for the sale of all Crafty Fox assets. Sale under the plan was ordered free of all liens, said liens to be impressed upon the proceeds of the sale. The sale was consummated and then confirmed by the Bankruptcy Court on August 1, 1978. By order dated July 25, 1978, the Court requested Memoranda of Law on Crafty Fox's objection to the payment of post-bankruptcy interest and the stipulated 5% attorney's fee. A memorandum was prepared by attorneys for the appellants and

submitted on August 22, 1978. The Bankruptcy Court, on August 25, 1978, directed payment of principal and accrued interest but reserved for future consideration the question of attorney's fees. At the request of the Court, attorneys for the appellants submitted, on September 19, 1978, an application for attorney's fees, and the Court on the following day set October 25, 1978 as the date for the hearing on objections to claims and allowances. The hearing was thereafter continued and the Bankruptcy Court, without said hearing having taken place, ultimately denied appellants' application for the stipulated 5% attorney's fee, awarding instead a fee of $2,000.[2] Appellants now assign error to the Bankruptcy Court's failure to award attorney's fees according to the 5% figure stipulated in the secured note.

The cases are uniform in holding that the validity in bankruptcy proceedings of a provision in a secured note calling for stipulated attorney's fees presents a question of state law:

> Whether counsel fees in such a situation are allowable in a bankruptcy proceeding depends upon the law of the state in which the land conveyed by the deed of trust is situate.

*Brown v. Security Nat. Bank of Greensboro*, 200 F.2d 405, 408 (4th Cir. 1952). *Accord, Manufacturer's Finance Co. v. McKey*, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935). The courts of the Commonwealth of Virginia have consistently upheld the validity of such provisions:

> In Virginia a stipulation in a note for compensation to attorneys for collection fees incurred, if payment of the note is not made at maturity, is a valid, binding and enforceable contract.

*Merchant & Planter's Bank v. Forney*, 183 Va. 83, 31 S.E.2d 340, 345 (1944). *Accord, University of Richmond v. Stone*, 148 Va.

---

thereunder, the following duties, rights, and obligations in like manner as if the same were expressly provided for by such deed of trust, namely:

(1) The deed shall be construed as given to secure the performance of each of the cove-

nants entered into by the grantor as well as the payment of the primary obligation.

2. Attorney's fees in accordance with the stipulated 5% figure resulted in a total of some $5,575, as calculated by appellants in their amended proof of claim.

636, 139 S.E. 257 (1927) (upholding stipulated attorney's fees of 10%).[3] The cases likewise indicate that where provision for stipulated attorney's fees is made in a note secured by a deed of trust, which deed specifies that it is given as security for said note, such attorney's fees themselves are part of the secured debt:

> When default was made in the payment of the . . . note, the attorney's fee of ten percent, under the terms of the note, when thereafter properly incurred, became due and payable as a part of the debt secured by the deed of trust.

*University of Richmond v. Stone*, 139 S.E. 257, 259 (Va.1927).

The Deed of Trust here at issue recites that it is given to secure "one negotiable interest bearing note of even date herewith." The Note, in addition to requiring payment of interest and principal, imposed on Crafty Fox liability for 5% attorney's fees should appellants be required to resort to attorney or suit for collection purposes.[4] The Deed additionally specified that, as per Virginia Code § 55–59, it was given to secure the performance of each of the covenants entered into by the grantor, one of which was the payment of 5% attorney's fees under the Note. If appellants' lien under the Deed of Trust was valid under Virginia law, then, the stipulated attorney's fees being part and parcel of that lien, appellants were entitled to payment from the proceeds of the land described in the Deed of Trust according to the stipulation.

The Bankruptcy Court, in its Memorandum Opinion and Order entered with respect to this question, concedes the validity of the provision for a stipulated attorney's fee here at issue, predicating its reduction of the stipulated fee on the ground that "this Court can only fix an allowance payable out of the estate which must reflect necessary time and services expended and that time and services otherwise expended in unnecessary efforts in behalf of creditors cannot be compensated." While the "necessary" standard utilized by the Bankruptcy Judge in evaluating the proper fee allowable to appellants' as attorney's fees may well be applicable to other similar controversies,

> The fact that the bankruptcy court considers legal assistance in asserting a particular claim unnecessary is material only if the stipulation itself excludes liability for unnecessary services.

3A *Collier on Bankruptcy*, § 63.15, p. 1854. Because the stipulation here at issue recited no such qualification, it was outside the province of the Bankruptcy Court to thus impose one.

It is this court's opinion that, absent such findings as would lead the state court to modify a provision in a note secured by a deed of trust for stipulated attorney's fees,[5] the Bankruptcy Court was without the authority to refuse to enforce such a stipulation as agreed to by the parties. Crafty

---

**3.** *See also, Schwab v. Norris*, 217 Va. 582, 231 S.E.2d 222 (1977). The Court in *Schwab* reversed the lower court's reduction of attorney's fees from the stipulated 18% of the total note to 10%, holding that, absent "allegation or evidence of mistake, fraud, misrepresentation, or overreaching" or a finding that the amount agreed upon was unreasonable, the courts were without authority to thus change the terms of the parties' agreement. *Id.* 231 S.E.2d at 225.

**4.** It should be noted that there has been no contention that the services here performed by appellants' attorneys were not within the contemplation of the Note's provision for attorney's fees. Given the broad language of the provision here at issue it would appear that any such contention would be without merit. *See, In re Essential Industries*, 150 F.2d 326, 328 (2d Cir. 1945).

**5.** As noted in n. 4, *supra*, the Virginia courts will go beyond the face of a stipulated attorney's fee given allegations or evidence of mistake, fraud, misrepresentation, or overreaching. *Schwab v. Norris*, 231 S.E.2d 222, 225 (Va. 1977). None of these factors appear remotely present in the instant case. Likewise, a finding that the stipulated fee was unreasonable will justify a refusal to enforce it. *Id.* The 5% fees stipulated in this case do not appear to have been unreasonable, especially in light of the Virginia courts' enforcement of stipulated fees ranging up to 18% of the total note, *Schwab v. Norris, supra*, nor has the Bankruptcy Judge so found, having concluded only that a fee of approximately 2% would be more reasonable given the bankruptcy court context of this litigation.

Fox having defaulted on its obligations under the Note, and appellant having been thereby required to retain an attorney to ensure protection of its interests thereunder, the contingent stipulated attorney's fees became as much an enforceable part of the debt secured by the Deed of Trust as were payments of principal and interest. Accordingly, this court holds that appellants' lien on the proceeds of the property conveyed under the Deed of Trust encompassed the stipulated attorney's fees of 5% of balance due under the Note. To the extent such proceeds were sufficient in amount, appellants should have been allowed to realize the stipulated 5% attorney's fees from them. SO ORDERED.

REMANDED for further proceedings consistent with this opinion.

ENTER: This 24th day of August, 1979.

(s) JAMES C. TURK
Chief U. S. District Judge.

## APPENDIX C